**H.J. BAKER & BRO., INC.**

v.

**ORGONICS, INC., et al.**

No. 87-349-A.

Supreme Court of Rhode Island.

Feb. 6, 1989.

John H. Blish, Blish & Cavanagh, Jeffrey Schreck, Providence, for plaintiff.

Michael A. Kelly, John Tarantino, Bruce Todesco, Adler, Pollock & Sheehan, Providence, for defendants.

## OPINION

FAY, Chief Justice.

The plaintiff, H.J. Baker & Bro., Inc. (Baker), commenced this action in 1985 to recover $422,658.08 that the defendant Orgonics, Inc., owed to the company pursuant to a New York judgment obtained January 11, 1985. The complaint included a demand for interest, costs, and punitive damages.

The plaintiff also named as defendants James M. O'Donnell, past president and major stockholder of Orgonics, and Fezido, Inc., a wholly-owned subsidiary of Orgonics, which held title to the real estate on which Orgonics was located. The plaintiff Baker asserts five separate claims against these defendants. First, the plaintiff alleges in count 2 that the defendants wrongfully conspired to hinder and defraud Baker in the collection of a debt owed to it pursuant to the New York court's judgment. Baker maintains that this conspiracy was accomplished by a scheme wherein the defendants transferred Orgonics's assets to defendant O'Donnell, who then resumed doing Orgonics's business under the new name of The Homestead. In count 3 the plaintiff alleges that the conveyance of real estate and other corporate assets to O'Donnell were fraudulent within the meaning of G.L.1956 (1985 Reenactment) § 6–16–1. The plaintiff asserts in counts 4 and 5 that O'Donnell, doing business as The Homestead, is liable as a successor for Orgonics's debt based upon fraud and because The Homestead is a "mere continuation of Orgonics." Finally, the plaintiff maintains in count 6 that O'Donnell is personally liable for the debt because he breached his fiduciary duty to Orgonics by obtaining payment for past wages in preference to Baker's judgment at a time when the corporation was insolvent.

Because of plaintiff's concern over depletion of Orgonics's assets, it sought a temporary restraining order enjoining defendants from transferring any of Orgonics's or Fezido's assets. The plaintiff obtained an order on February 27, 1985, which was later extended on March 6, 1985, when plaintiff learned that defendant O'Donnell had mortgaged the real estate in order to procure a $100,000 loan. Shortly thereafter the court also allowed an attachment of up to five hundred thousand dollars' worth of defendant's assets. This included an attachment of several of O'Donnell's personal bank accounts.

The matter went to trial in the Superior Court on October 14, 1986. At the close of trial and before the jury was charged, the

trial justice directed a verdict for plaintiff on defendants' counterclaims and denied defendants' request for directed verdicts on plaintiff's five claims. The jury rendered a verdict for defendants on November 5, 1986, in the form of answers to five written interrogatories submitted by the trial justice. The jury did not return a general verdict. On November 13, 1986, Baker filed a motion for a new trial on all its claims. The court granted Baker's motion on counts 3 and 6, concluding that no verdict was reached on those issues because they were not addressed in the written interrogatories. The trial justice also allowed a new trial on count 2 despite the jury's verdict because the evidence overwhelmingly supported Baker's allegations of fraud. Baker's request for a new trial on count 5, alleging successor liability, was denied. The trial justice did not address count 4 in his opinion or order.

After a thorough examination of the expansive trial court record, we shall address only those facts pertinent to our decision. As of January 1, 1983, James M. O'Donnell was the president, director, and largest shareholder of Orgonics. The Orgonics plant was located in North Smithfield, Rhode Island, on land owned by Fezido, Inc., a real estate holding company that leased the realty to Orgonics. Originally Orgonics developed and manufactured a leather-tankage-based fertilizer called Organiform L.T., but it changed over in 1981 to manufacturing Homogenite 38, a 38-per-cent-nitrogen fertilizer. The relationship between Baker and Orgonics was such that Baker supplied Orgonics with its raw materials, Orgonics manufactured the fertilizer, and then Baker distributed the product.

Toward the end of 1982, Orgonics faced serious financial difficulties, and operations were halted for the first six months of 1983. At that time Orgonics owed Baker for materials supplied to it but was insolvent and had been unable to pay this debt for a number of years. Orgonics's remaining assets in 1983 were basically the real estate owned by Fezido and Orgonics's machinery and equipment. The plaintiff alleges defendants began a scheme at this time to transfer the remaining assets to O'Donnell, thus rendering plaintiff's judgment against Orgonics worthless.

The alleged scheme unfolded as follows. On February 15, 1983, O'Donnell proposed to Orgonics's directors that he, doing business as The Homestead, lease the real estate from Fezido and the equipment from Orgonics in order to keep the business running. In lieu of paying rent, he proposed to assume some of Orgonics's monthly debts. O'Donnell also suggested he resign from the board in order to avoid a conflict of interest. The lease commenced in March but was retroactive to February 1983. Coincidentally, at about this time Lawrence S. Gates, Orgonics's secretary, stopped taking minutes at the company board meetings. The last recorded minutes were taken on January 14, 1983.

Baker brought suit against Orgonics in a New York court on May 16, 1983, to recover the $422,658.08 owed to it by Orgonics. Just three days later O'Donnell commenced an action in Rhode Island Superior Court against Orgonics for $130,200 allegedly due as back wages. O'Donnell based his claim upon a board vote to pay him $1,250 above his salary on a monthly basis if there was sufficient cash available for the corporation to pay this sum. The corporation's treasurer, Herbert P. Nutting, had sole discretion to make this determination.

Nutting testified at trial that between 1972 and 1982 there were only a few months when he determined sufficient cash existed to pay O'Donnell. Normand R. Piette, treasurer from 1982 through 1984, testified that at no time during that period was there available cash. Despite the questionable nature of O'Donnell's claim, Orgonics failed to appear in Rhode Island Superior Court to defend against O'Donnell's suit. No answer was filed, and the court entered a default judgment in O'Donnell's favor for $138,000 plus interest and costs. To satisfy the judgment, the court granted O'Donnell's accompanying motion to attach the stock of Fezido, the record titleholder of the realty on which Orgonics stood. Regarding Baker's New York action, Orgonics did raise a defense, and the record indicates that O'Donnell personally

agreed to pay the legal fees even though he had resigned from the Orgonics board.

In June 1984 O'Donnell offered to purchase Orgonics's plant and equipment in exchange for assuming some of its financial obligations. This offer included a promise to discharge the debt Orgonics now owed O'Donnell from the $138,000 judgment. Orgonics's stockholders rejected this offer. Then in July and August 1984, O'Donnell bought up all the mortgage interests on the property that Orgonics leased from Fezido. As holder of the mortgages he then declared all the mortgages on the Fezido realty to be in default. Initially O'Donnell advertised a foreclosure sale of the property. When Baker learned on its own of the foreclosure sale, O'Donnell's attorney informed Baker that the sale had been canceled but failed to mention that a default judgment had been entered or that a sheriff's execution sale of Fezido stock was scheduled to go forth shortly thereafter.

The sheriff's sale was held on December 3, 1984, without Baker's knowledge. O'Donnell, as sole bidder, purchased all Fezido's stock for $50. O'Donnell thus became the owner of Fezido Corporation, the real estate holding company, and therefore the owner of the Orgonics property.

These facts indicate that at the time Baker obtained its New York judgment against Orgonics, O'Donnell owned the real estate, was in possession of the plant and equipment, and was using virtually the same employees to manufacture the same, or a similar, product. As Baker states in its brief, nothing had changed "except the sign on the front door." O'Donnell had also encumbered the real estate with a mortgage and used the proceeds to pay off the debts of The Homestead. Orgonics was no longer functioning as an entity and was virtually devoid of assets with which to satisfy Baker's judgment. Baker then commenced this Rhode Island action, alleging that the various conveyances to O'Donnell were part of a fraudulent scheme.

I

## COUNT 3: FRAUDULENT CONVEYANCE

## COUNT 6: BREACH OF FIDUCIARY DUTY

The defendants appeal from the trial justice's grant of plaintiff's motion for a new trial on counts 3 and 6 of the complaint. The plaintiff asserts that the trial justice correctly granted the motion for a new trial as to count 3, fraudulent conveyance, and count 6, breach of fiduciary duty, because he failed to give the jury requested special interrogatories regarding the issues raised in those counts.[1] The plaintiff contends that as a result of the failure to submit both the requested interrogatories and a general verdict form to the jury, the jury had no opportunity to render a verdict concerning the above counts and did not do so. The defendants argue that plaintiff waived any right to object to the verdict on these counts because it failed to move for resubmission of interrogatories when the jury returned its verdict.

In granting plaintiff's motion for a new trial, the trial court justice conceded that he had failed to submit to the jury any special interrogatories that framed the issues in counts 3 and 6. The justice also admitted that no general verdict form addressing all counts of plaintiff's complaint was given to the jury. The motion was granted, therefore, because in the justice's own words, "at no time was there any verdict rendered with respect to counts 3 and 6."

---

1. The interrogatories that plaintiff requested for submission were:

"5. Do you find that defendant, James M. O'Donnell, was a 'corporate insider' of Orgonics, Inc. at the time of the transfers of any of Orgonics assets to him in 1983 and 1984?

\* \* \* \* \* \*

"7. Do you find that the transfer of Fezido, Inc. stock to defendant, James M. O'Donnell

was made without 'consideration' (value) being given by Mr. O'Donnell?"

The trial justice charged the jury on the fraudulent conveyance and breach of fiduciary duty claims but gave the jury written interrogatories only in regard to count 2, actual fraud, and count 5, defendants' liability as the "mere continuation of Orgonics."

Upon review this court will not overturn the trial justice's decision unless he overlooked or misconceived material evidence or was otherwise clearly wrong. *Gardiner v. Schobel,* 521 A.2d 1011, 1015 (R.I.1987); *Kwarciak v. Star Market,* 506 A.2d 545, 547 (R.I.1986); *Cotrona v. Johnson & Wales College,* 501 A.2d 728, 731 (R.I.1985). Applying this standard, we begin with a review of defendants' contention that plaintiff waived his right to claim error. The steps necessary to object to the form of special interrogatories are set out in Rule 49(a) of the Superior Court Rules of Civil Procedure, which is identical to the federal rule.[2] Contrary to defendants' assertion, Rule 49(b) does not control in a case such as this where no general verdict form was submitted to the jury. Under analogous federal law, courts have held that Rule 49(a) requires a party to object to special interrogatories either by submitting requested interrogatories to the court and having them denied or by objecting to particular interrogatories before the jury retires to reach a verdict. *Stewart & Stevenson Services, Inc. v. Pickard,* 749 F.2d 635, 641 (11th Cir.1984); *see also Huddleston v. Herman & MacLean,* 640 F.2d 534, 550 (5th Cir.1981), *rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). The plaintiff did both, thus adequately preserving his right to claim error. The record shows that plaintiff proposed interrogatories addressing the issues in counts 3 and 6 and that the trial justice failed to submit these interrogatories to the jury. The transcript also reveals that plaintiff objected to the court's failure to include the requested interrogatories before the court submitted its own version to the jury.

Since we hold that plaintiff properly preserved its right to object, we next review the merits of plaintiff's claim of error, namely, that no verdict was ever returned on counts 3 and 6 and that a new trial is required. The purpose of a verdict based upon special interrogatories under Rule 49(a) is to help the court determine the basis of a jury's verdict in cases involving multiple and complex counts, such as the present case. *Jamison Co. v. Westvaco Corp.,* 526 F.2d 922, 935 (5th Cir.1976). The Rule 49(a) special interrogatories form reveals that no verdict was returned on counts 3 and 6, which allege that the conveyances to O'Donnell were fraudulent under § 6–16–1 and that O'Donnell breached his fiduciary duty as a corporate officer and insider by transferring assets to himself. The interrogatories submitted by the court numbering 1 through 5 do not address these issues. Because such an omission is clearly harmful error, we hold that the trial justice was correct in granting the motion for a new trial on these counts, and we affirm.

## II

### COUNT 2: FRAUDULENT SCHEME

Exercising his right to act as seventh juror, the trial justice granted plaintiff's motion for a new trial on count 2 because he determined that the verdict went against the weight of the evidence. The defendants contend that the trial justice overlooked and misconstrued evidence. Because the evidence in the record amply supports the decision and is adequately re-

---

2. Rule 49(a) of the Superior Court Rules of Civil Procedure provides:

"*Special Verdicts.* The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court

shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

ferred to by the trial justice, we affirm his grant of a new trial on count 2.

When deciding a motion for a new trial, the trial justice must weigh the material evidence and determine the credibility of witnesses. *Cartier v. State*, 420 A.2d 843, 847 (R.I.1980). Because he may use broad discretion in determining what is persuasive, the justice may draw reasonable inferences from the record and supplement evidence by reaching inferential conclusions. *Id.* If the justice finds that reasonable minds could differ, he must uphold the jury's verdict. *Barbato v. Epstein*, 97 R.I. 191, 194, 196 A.2d 836, 837 (1964). However, if he decides that the verdict "fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence," the justice should allow the motion for a new trial and set aside the jury verdict. *Id.* Although the trial justice need not refer to every piece of evidence, he must refer to the specific evidence that prompted his decision so that, upon review, we can determine whether the decision resulted from misconstruing or overlooking evidence or is otherwise clearly wrong. *Pimental v. Postoian*, 121 R.I. 6, 11, 393 A.2d 1097, 1100 (1978).

Count 2 alleges that defendant James M. O'Donnell engaged in a fraudulent scheme intended to delay and prohibit plaintiff from collecting the debt owed to it by Orgonics, Inc. The trial justice's decision identifies many suspect occurrences that support his conclusion of the scheme's existence. He refers specifically to the fact that O'Donnell commenced an action against his own company, Orgonics, for recovery of $130,200 in back pay only three days after plaintiff brought its suit in New York against Orgonics. The court particularly notes that Orgonics raised no defense against O'Donnell in that action, yet Orgonics defended the New York action with O'Donnell's cooperation and financial assistance. There was also evidence in the record to show that the $130,200 was not owed to O'Donnell since the Orgonics board's vote reflects that this bonus salary was to be paid only if the corporation had

sufficient cash to pay this sum. The determination of whether sufficient funds existed was within the sole discretion of the corporation's treasurer. Yet no determination was ever made because O'Donnell's claim went uncontested. No defenses were raised to his action, and O'Donnell won by means of a default judgment. The trial justice points out that O'Donnell was then able to levy against the stock of Fezido, Inc., owner of the realty upon which the company was located. This realty was Orgonics's major asset. O'Donnell had therefore effectively gained ownership of the realty and removed it from the obtainable assets of Orgonics.

The trial court's decision also describes evidence supporting its conclusion that O'Donnell acquired an assignment of two mortgages on the real estate leased to Orgonics by Fezido and then attempted to foreclose on the instruments without notifying plaintiff, a major creditor of Orgonics. When plaintiff learned of the foreclosure sale through independent investigation, O'Donnell's attorney assured plaintiff that the sale was canceled yet failed to mention the anticipated sheriff's sale intended to effectuate the same end of giving O'Donnell a 100 percent interest in the realty.

The trial justice concludes with a most convincing discussion of the evidence of collusive acts by other corporate officers. The corporate secretary and attorney, Lawrence S. Gates, mysteriously stopped taking minutes at board meetings. Gates's testimony that this inaction was due to a lack of remuneration for his work is not credible since he concurrently was attending board meetings and was representing Orgonics in plaintiff's action. A letter from Gates was allowed into evidence that suggested that O'Donnell would pay any legal fees incurred for Gates's defense of the suit brought by O'Donnell against Orgonics. Certainly evidence of an offer to pay the opposing party's counsel fees strongly connotes a conspiracy.

The trial justice saw an obvious "scenario" to defraud Baker and hinder it in the collection of its debt while ridding Orgonics

of its corporate assets. In reaching this decision, the justice did not overlook or misconstrue any material evidence. His conclusion that the verdict was against the weight of the evidence and did not do substantial justice to the parties is not clearly wrong.

## III

## DEFENDANTS' COUNTERCLAIMS: ABUSE OF PROCESS, MONOPOLIZATION

■ The defendant James M. O'Donnell also appeals the trial justice's grant of a directed verdict for plaintiff on defendants' counterclaims of abuse of process and violation of state antitrust laws. It is well settled that, upon review of a directed verdict, this court must apply the same criteria as the trial justice. We must examine all the evidence in the nonmoving party's favor without weighing the evidence or credibility of the witnesses and draw only inferences that support the nonmoving party's position. *Souza v. Narragansett Council, Boy Scouts of America*, 488 A.2d 713, 714 (R.I.1985). If our review discloses issues upon which reasonable minds could differ, then we must reverse the trial court's grant of the directed verdict and allow a new trial on the issue. *Id.* at 714–15; *see also Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 724 (R.I. 1985); *AAA Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, 479 A.2d 112, 115 (R.I.1984).

■ The trial justice correctly granted plaintiff's motion for a directed verdict regarding both counterclaims. Considering first the abuse of process claim, O'Donnell failed to introduce any evidence that Baker had used a legal procedure to accomplish "an ulterior or wrongful purpose for which it was not designed." *Nagy v. McBurney*, 120 R.I. 925, 934, 392 A.2d 365, 370 (1978). O'Donnell alleges that Baker used this lawsuit to harass him and eliminate him as a competitor in the fertilizer business. As support for this assertion, O'Donnell points to the fact that he was the only coconspirator named in the suit. Yet, as plaintiff points out, O'Donnell was the only person who retained any of the original corporate assets; therefore, the decision to sue O'Donnell was an exercise of sound business judgment.

The defendant also argues that the attachment on his property caused him lost profits. Regardless of whether the attachment resulted in losses to defendant, it was ordered after a full adversarial hearing in which a Superior Court justice found sufficient evidence in Baker's favor to allow the attachment of five hundred thousand dollars' worth of defendants' assets. We also note that plaintiff voluntarily allowed defendant O'Donnell to substitute different collateral for the property previously attached in order to free up business assets. O'Donnell's allegation that this attachment in some way demonstrates abuse of process is meritless.

As final support for his claim of abuse of process, O'Donnell asserts that the trial justice incorrectly allowed plaintiff's motion in limine to exclude evidence concerning plaintiff's writeoff of the money owed to it by defendants as a "bad debt" on its 1984 tax returns. O'Donnell asserts this writeoff was evidence of an ulterior motive because I.R.C. § 166(a)(1) requires that one must have no belief that recovery is possible in order to write off a bad debt. O'Donnell concludes, therefore, that plaintiff had some motive for bringing suit other than collection of the debt. We agree with plaintiff's contention that claiming a § 166(a)(1) deduction does not bar a subsequent suit for the debt. *See Redfield v. Eaton*, 53 F.2d 693, 694 (D.Conn.1931); *see also Cherrydale Cement Block Co.*, ¶ 62, 262 P–H Memo TC (Nov. 7, 1962) (right to claim deduction of bad debt in one year is not precluded by partial recoupment of debt in subsequent year); *Woods Lumber Co. v. Commissioner of Internal Revenue*, 44 B.T.A. 88, 94 (1941) (right to bad-debt deduction for worthless debt is not affected by fact that recoveries are made in later year). Because plaintiff was not precluded from taking the bad-debt deduction and simultaneously continuing efforts to collect the debt, any evidence of the deduction was irrelevant and properly excluded.

A review of defendants' evidence demonstrates that no evidence was introduced from which a jury could properly find improper motive to support an abuse of process claim. The directed verdict is therefore affirmed.

The defendants' claims of monopolization or attempted monopolization were likewise unsubstantiated. To the extent practicable, we should construe Rhode Island's antitrust statute, G.L.1956 (1985 Reenactment) chapter 36 of title 6, in harmony with judicial interpretations of the federal antitrust statutes. *Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 278 (1st Cir.1981), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). Under federal antitrust standards, in order to demonstrate monopolization, O'Donnell had the burden of proving that Baker possessed monopoly power and the intent to acquire and maintain that power in the relevant product and geographic markets. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778, 786 (1966). The trial justice found upon a review of all the evidence and witnesses that the relevant geographic market was larger than Rhode Island. We concur with this finding and with the trial justice's conclusion that O'Donnell failed to demonstrate that Baker's actions had a substantial effect on sales of defendants' product in the relevant geographic area.

O'Donnell also did not introduce evidence that Baker had "monopoly power," namely, a predominant share of the relevant product and geographic markets. 384 U.S. at 571, 86 S.Ct. at 1704, 16 L.Ed.2d at 786. Although there was evidence that similar products were marketed in an area extending throughout New England, into the Mid–Atlantic states, and into Florida, O'Donnell failed to introduce sufficient evidence from which a jury could determine the relevant product or geographic markets.

To demonstrate an attempt to monopolize, O'Donnell had to show a specific intent to monopolize and a dangerous probability of success. *George R. Whitten, Jr., Inc. v.*
*Paddock Pool Builders, Inc.*, 508 F.2d 547, 550 (1st Cir.1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). We again concur with the trial court that this claim fails because of the lack of evidence demonstrating intent. No evidence exists to support this claim other than the filing of Baker's lawsuit against defendants. The record is replete with evidence substantiating the legitimacy of Baker's suit. The trial court's reversal of the jury verdict in defendants' favor and the numerous orders attaching defendants' property also validate the propriety of plaintiff's action.

Owing to the lack of evidence concerning the relevant markets, monopoly power, and anticompetitive intent, we find no error with the trial justice's directing a verdict for plaintiff on the antitrust counterclaims.

## IV

### COUNT 5: SUCCESSOR LIABILITY BASED UPON A "MERE CONTINUATION" THEORY

We next address plaintiff's cross-appeal of the trial court's denial of its motion for a new trial on count 5. This count alleges that O'Donnell, doing business as The Homestead, is liable for the debt of Orgonics as a "mere continuation" of that entity. The trial court's only stated reason for denial was that there was "sufficient evidence upon which reasonable minds could differ." As stated above, the trial justice need not exhaustively review all evidence when considering a motion for a new trial. However, if the trial justice's decision lacks clarity or precision and he thereby fails to make "the requisite independent evaluation of the evidence," this court will independently review the record and determine whether a new trial is warranted. *Morinville v. Morinville*, 116 R.I. 507, 512, 359 A.2d 48, 51 (1976). Under the rule stated in *Morinville*, we examine the evidence in the light most favorable to the prevailing party and determine whether there is any competent evidence which supports the verdict. *Id.* at 516, 359 A.2d at 54. In the event that we find such evidence, the ver-

dict will be sustained. If such evidence is lacking, a new trial will be ordered. Applying this standard, we review the law and evidence regarding plaintiff's mere continuation theory.

 Generally, a company that purchases the assets of another is not liable for the debts of the transferor company. *Cranston Dressed Meat Co. v. Packers Outlet Co.*, 57 R.I. 345, 348, 190 A. 29, 31 (1937). An exception to this rule is made in a situation in which the new company " 'is merely a continuation or a reorganization of another, and the business or property of the old corporation has practically been absorbed by the new * * *.' " *Id.* In such a case, the new company will be held responsible for the old one's debts. *Id.* The facts and circumstances of a particular case must be examined to determine whether the new company is merely a continuation of the original entity. *Id.* at 349, 190 A. at 31. A New Jersey Superior Court has succinctly noted five persuasive criteria in finding a "continuing" entity: (1) there is a transfer of corporate assets; (2) there is less than adequate consideration; (3) the new company continues the business of the transferor; (4) both companies have at least one common officer or director who is instrumental in the transfer; and (5) the transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law. *Jackson v. Diamond T. Trucking Co.*, 100 N.J. Super. 186, 196, 241 A.2d 471, 477 (1968). Other courts have examined criteria such as the common identity of officers, directors, and stockholders, *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 693 (1st Cir.1984), and the continued use of the same office space and service to the same client base, *Bergman & Lefkow Ins. Agency v. Flash Cab Co.*, 110 Ill.App.2d 415, 432, 249 N.E. 2d 729, 737 (1969).

 Considering all these factors, we are convinced that the record supports a conclusion that The Homestead, having absorbed the business and property of Orgonics, was a mere continuation of that corporation. The record establishes that O'Donnell was a principal officer in both entities.

Even though the form of the organization changed from a corporation to a sole proprietorship, the management remained substantially the same. In addition, both companies sold virtually identical 38–percent–nitrogen products. The Homestead operated from the same manufacturing plant as Orgonics under a similar leasing arrangement with Fezido, Inc. Many of the original employees continued working for The Homestead and, in fact, were initially paid with Orgonics's checks and covered under Orgonics's workers' compensation plan. Because we exercise our right to make an independent determination, we find that the evidence strongly supports a "mere continuation" theory and that no competent evidence supports the jury's verdict. We therefore reverse the trial justice's decision and hold that Baker is entitled to a new trial on count 5.

V

## COUNT 4: SUCCESSOR LIABILITY BASED UPON FRAUD

 In conclusion we address the plaintiff's cross-appeal on count 4. We consider the trial justice's silence on this count to be a denial of the plaintiff's motion. Count 4 alleges that O'Donnell is liable for the debt of Orgonics to the plaintiff under the doctrine of successor liability based upon fraud. Because of the limited scope of the special interrogatories that were submitted to the jury and the failure to submit a general verdict form to the jury, it is unclear whether the jury rendered a verdict on this count. In any event, the trial justice's grant of a new trial on count 2, claiming actual fraud, is inconsistent with a denial of the plaintiff's count 4 claim of liability as a successor based upon fraud. We remand for a new trial because of the inadequacy of the jury's verdict and because the trial court's denial goes against the weight of the evidence and the court's ruling on count 2.

To summarize our holding, we affirm the trial justice's grant of a new trial in regard to counts 2, 3, and 6. We also affirm his directed verdict for the plaintiff on the

defendants' counterclaims of abuse of process and antitrust violations. As to counts 4 and 5, we reverse the trial justice and allow the plaintiff a new trial on these claims. This case is remanded for further proceedings consistent with this opinion.