Dorothy CASEY

v.

**SAN-LEE REALTY, INC. et al.**

**No. 91–647–Appeal.**

Supreme Court of Rhode Island.

April 13, 1993.

Steven A. Robinson, Shayle Robinson, Robinson & Robinson, Cranston, for plaintiff.

Kris M. Marotti, Thomas Tarro III, Fortunato & Tarro, Warwick, for defendants.

## OPINION

SHEA, Justice.

This case came before the court on the appeal of the plaintiff, Dorothy Casey (Casey), from a judgment of the Superior Court following a nonjury trial, in favor of the defendants Antonetta Timpani (Antonetta) and J.A.T. Realty, Inc. (J.A.T. Realty). On August 23, 1984,[1] the plaintiff was living with her daughter Joan Doyle (Doyle) at 172 Pocasset Avenue in the city of Providence, which property was, at the time, owned by the defendant San–Lee Realty, Inc. (San–Lee Realty). Casey was injured when she fell into a hole in the driveway at her daughter's apartment. The present controversy arose out of that incident.

The evidence introduced showed that San–Lee Realty, a Rhode Island corporation incorporated in 1975, had acquired the property at 172 Pocasset Avenue on June 5, 1978. Antonetta was the sole shareholder and director of San–Lee Realty.

In addition to the property at 172 Pocasset Avenue, San–Lee Realty owned properties at 18 Bend Street, 19 Bend Street, 148 Pocasset Avenue, and 170 Pocasset Avenue, all in the city of Providence. From 1978 to 1981 Antonetta's son, Joseph Timpani (Joseph), managed all the properties. His duties included collecting the rents and maintaining the premises. When Joseph left the state in 1981, his wife, Marie, took over his functions at San–Lee Realty. There was some evidence that the tenants living in the San–Lee Realty properties did not know of the existence of the corporation or of Antonetta and that they paid their rent either to Joseph or to Marie.

On August 24, 1984, the day after her mother fell, Doyle telephoned Marie in order to advise her of Casey's accident and the dangerous condition that existed at 172 Pocasset Avenue. Doyle did not, however, tell Marie of the extent of her mother's injuries or of the possibility of a law suit. Marie testified that she told her mother-in-law of her conversation with Doyle.[2] Joan Doyle testified that she rented her apartment from Joseph and not from San–Lee Realty. She also stated that she had never met Antonetta and had never made her rent check payable to either Antonetta or San–Lee Realty.

On November 30, 1984, Antonetta, as the sole shareholder and director of San–Lee Realty, adopted a plan of dissolution of the corporation, which she brought about by "unanimous written consent in lieu of a special meeting" as provided for by G.L. 1956 (1969 Reenactment) §§ 7–1.1–30.3 and 7–1.1–39.1. In order to effectuate this plan, on December 19, 1984, San–Lee Realty sold 148 Pocasset Avenue and 170 Pocasset Avenue to the Providence Redevelopment Agency for $162,500. San–Lee Realty then transferred the remaining properties, together with the cash proceeds it realized from the sale to the Providence

---

1. Although the complaint cites August 22, 1984, as the date of injury, at all places in the transcript, including the decision of the Superior Court, August 23 is used as the date.

2. Because Antonetta is completely deaf, Doyle was not able to speak to her directly.

Redevelopment Agency, to Antonetta, the sole shareholder of the corporation. She subsequently conveyed the three remaining properties to her grandchildren, Sandra Marie Timpani, who had already reached the age of majority and Anthony Lee Timpani, who was to turn eighteen on January 15, 1985, for no monetary consideration. Finally, in January of 1985, Sandra Marie Timpani and Anthony Lee Timpani transferred the properties, which they had acquired from Antonetta, to the newly formed J.A.T. Realty. J.A.T. Realty had the same address for tax purposes as that of San-Lee Realty.

On March 5, 1986 the Articles of Dissolution of San-Lee Realty, were filed in the Rhode Island Secretary of State's office. They were dated December 31, 1984.

Antonetta first learned that plaintiff intended to press a legal claim against San-Lee Realty when, in August of 1986, she received a letter of representation from plaintiff's counsel. The plaintiff initiated suit on November 13, 1986, in Providence Superior Court against defendants San-Lee Realty and J.A.T. Realty. The plaintiff later amended her complaint to include Antonetta as a defendant.[3]

After a jury-waived trial, judgment was entered for plaintiff against San-Lee Realty in the amount of $43,315.19. Judgment was, however, entered in favor of defendants J.A.T. Realty and Antonetta. The plaintiff now appeals from the judgments for those defendants.

The plaintiff's first allegation of error is that the trial court should have found that San-Lee Realty was not a true corporation and that, therefore, its sole stockholder, Antonetta, was not entitled to the protection of corporate liability. In the alternative plaintiff argues that sufficient facts existed to warrant the Superior Court's piercing the corporate veil of San-Lee Realty and holding Antonetta personally liable for plaintiff's injuries. These issues are

not properly before this court because plaintiff raises them for the first time on appeal.

It is well settled that this court will not consider an issue on appeal that was not raised before the trial court. *Bouchard v. Clark*, 581 A.2d 715 (R.I.1990); *Rhode Island Hospital Trust National Bank v. De Beru*, 553 A.2d 544 (R.I.1989); *State v. Burke*, 522 A.2d 725 (R.I.1987). The limited exception to this rule is that the court will review allegations of violations of basic constitutional rights, but even then only in very narrow circumstances. *Burke*, 522 A.2d at 731. No constitutional claim exists in this case. Therefore, absent allegations below that would support the claims plaintiff now raises before us, we need not consider these questions.

The record discloses no contention by plaintiff below that San-Lee Realty was not a legally existing corporation, nor are there any allegations of fact that would support piercing the corporate veil. The plaintiff had several opportunities to amend her complaint and did so by adding Antonetta as a defendant. Allegations of this nature were never added. The issues are not properly before us.

The plaintiff's second assignment of error is her contention that the trial justice should have found both Antonetta and J.A.T. Realty liable to plaintiff under a theory of successor liability. The seminal case in this jurisdiction on successor corporate liability is *H.J. Baker & Bro., Inc. v. Organics, Inc.*, 554 A.2d 196 (R.I.1989). The trial justice below based her decision in this case on her interpretation of our ruling in *Baker*. In that case this court adopted the New Jersey rule for determining if a successor entity was in fact a "continuing entity" and should thus be held liable to the creditors of the corporation that it succeeded. The five factors for making such a determination are

---

**3.** Although plaintiff's amended complaint adding defendant Antonetta was filed more than three years after the incident, the trial justice ruled that defendant Antonetta had had notice that but for an error she would have been joined as a party at the outset of the litigation and that, therefore, under Rule 15(c) of the Superior Court Rules of Civil Procedure she could be joined after the period of the statute of limitations had run. The defendant does not dispute that finding on appeal, and thus we do not address this issue.

"(1) there is a transfer of corporate assets; (2) there is less than adequate consideration; (3) the new company continues the business of the transferor; (4) both companies have at least one common officer or director who is instrumental in the transfer; and (5) the transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law." *Id.* at 205.

■ Even though there was a transfer of corporate assets from San–Lee Realty to Antonetta, that transfer was not fraudulent. Antonetta was the sole shareholder of San–Lee Realty and was therefore entitled to all the corporate assets upon dissolution of the corporation. "Under a general equitable theory commonly known as the 'trust fund' doctrine, the property of a dissolved business corporation ultimately passes to its stockholders as the actual owners of such property subject, of course, to the payment of the corporate debts." *Friendly Home, Inc. v. Shareholders and Creditors of Royal Homestead Land Co.,* 477 A.2d 934, 938 (R.I.1984). Consequently the transfer of assets from San–Lee Realty to Antonetta as part of the plan of corporate dissolution did not constitute a transfer of corporate assets for inadequate consideration under our ruling in *Baker.*

In addition, Antonetta did not create a new corporation or carry on the business of the former San–Lee Realty after she took possession of its assets. Therefore, she did not meet the third and fourth *Baker* factors.

Although the transfer of assets to Antonetta technically rendered San–Lee Realty incapable of paying plaintiff's judgment, that judgment was entered long after the lawful dissolution of the corporation. There was no evidence that would demonstrate that Antonetta, as sole shareholder and director of San–Lee Realty, had any knowledge of a potential law suit until many months after the corporation had been dissolved. In short, there was no evidence that San–Lee Realty was dissolved in order to defraud plaintiff or any other creditor.

■ Finally, we address plaintiff's contention that J.A.T. Realty should be held liable as a successor entity to San–Lee Realty. In rendering the decision, the trial justice found that plaintiff had failed to prove the elements necessary to establish that J.A.T. Realty was liable to plaintiff as a successor corporation to San–Lee Realty. The court's findings included these facts: (1) the ultimate transfer of assets from San–Lee Realty to J.A.T. Realty, through Antonetta and her grandchildren, involved only a portion of the total corporate assets of San–Lee Realty, (2) the consideration in the case of both transfers was not less than adequate, (3) J.A.T. Realty and San–Lee Realty had no officers, directors, or shareholders in common, and (4) although the businesses of both corporations were similar, they were not in fact the same.

■ The findings of fact made by a trial justice, sitting without a jury, are to be given great weight. They "will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence." *Raheb v. Lemenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976).

When one applies the facts as found by the trial court to the standard enunciated in *Baker* it is clear that J.A.T. Realty is not a successor to San–Lee Realty. The transfer of assets from Antonetta to her grandchildren, although for no monetary consideration was not a transfer for inadequate consideration as that term is contemplated by our holding in the *Baker* case.[4] Transfers of property from grandparents to grandchildren are not uncommon. The trial justice found that "[r]elationships which engender transfers by inter vivos gifts are not inadequate consideration."

In addition there were no stockholders, officers, or directors in common between San–Lee Realty and J.A.T. Realty. And, as the trial justice noted, although the busi-

---

**4.** We acknowledge that the consideration in this case would not have validated a transfer of assets if the transfer were made with notice of the existence of a claim of a creditor.

nesses of San–Lee Realty and J.A.T. Realty were similar, they did not hold title to all of the same real estate and thus were not identical. Accordingly, J.A.T Realty was not the successor to San–Lee Realty for purposes of assuming the corporate debts and liabilities of the dissolved corporation. J.A.T. Realty cannot therefore be held liable for the plaintiff's injuries.

For these reasons the plaintiff's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers of the case are remanded to the Superior Court.