April 6, 2022

**Supreme Court**

No. 2020-28-Appeal.
(P 17-412M)

| | | |
|---|---|---|
| Kenneth Leon | : | |
| v. | : | |
| Marysol Krikorian. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kenneth Leon　　　　　　:

v.　　　　　　:

Marysol Krikorian.　　　　:

Present:  Suttell, C.J., Goldberg, Robinson, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on February 2, 2022, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. The defendant, Marysol Krikorian (Krikorian), appeals from a Family Court decision and order denying her motion for relocation with the minor child of the parties.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this appeal may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order denying the defendant's motion to relocate.

**Facts and Travel**

The parties were never married and together have one child, whom we shall refer to herein as C.K., a daughter born in February 2016. In January 2017, the plaintiff, Kenneth Leon (Leon), filed a miscellaneous petition alleging that he was being deprived of a relationship with C.K. and seeking, among other relief, an order (1) granting him joint custody, visitation, placement of his name on C.K.'s birth certificate, and a change of C.K.'s surname to his own; (2) requiring both parties to share in the support and expenses of C.K.; and (3) granting Krikorian physical placement of C.K. The matter was heard before a Family Court trial justice on a number of occasions.[1] Pursuant to an order entered on May 9, 2017, the parties were granted joint custody and Krikorian was granted physical placement of C.K. After a further hearing on February 28, 2018, an order entered granting Krikorian the right to claim C.K. as a dependent on her tax returns; setting forth a visitation schedule; requiring Leon to place C.K. on his employer-sponsored health insurance and to pay retroactive child support; and declaring that

---

[1] The issues in Leon's miscellaneous petition were heard on April 6, 2017; October 24, 2017; and February 28, 2018. Three orders entered. On May 9, 2017, the parties were awarded joint custody, Krikorian was awarded physical placement, Leon was ordered to pay child support, a temporary visitation schedule was implemented, and other issues were reserved for further hearing. On November 14, 2017, the trial justice ordered that Leon's name be placed on C.K.'s birth certificate, set a new temporary visitation schedule, and ordered the parties to attend mediation. After the matter was heard on February 28, 2018, an order entered on May 21, 2019, whereby the trial justice addressed the remaining issues raised in Leon's miscellaneous petition.

"in exchange for [Leon] agreeing to allow [C.K.] to keep [her mother's last name], [Krikorian] agree[d] to leave child support open."

On April 18, 2018, Krikorian filed a motion to relocate with the minor child. Krikorian sought a modification of the previously set visitation schedule, stating that she desired "to relocate with the minor child to the State of Florida" and alleging that it was "in the best interest of the minor child that [she] and [the] minor child be permitted to relocate[.]" Krikorian asserted that she had been offered a job in Palm Beach County, Florida; that Krikorian's mother (C.K.'s maternal grandmother), who was alleged to be Krikorian's primary support system in the care of her two children (C.K. and C.K.'s brother, whose father is Krikorian's ex-husband), had moved to Fort Pierce, Florida; that she and her children would live with the maternal grandmother, who would assist in the care of the children at no cost to Krikorian; and that C.K. would attend a private Christian preschool tuition-free for two years. In the motion, Krikorian also raised concerns regarding Leon's care of C.K. and his requests for money in exchange for allowing Krikorian and C.K. to move to Florida and for C.K. to keep Krikorian's surname. On April 27, 2018, Leon filed an objection to the relocation motion, and in September 2018, the motion was scheduled for trial.

The trial justice heard testimony over three days from three witnesses: Krikorian; Leon; and Krikorian's brother-in-law, Thomas Dejordy. Krikorian

testified as to her current living arrangement; ownership of a three-bedroom, mortgage-free single-family home in Warwick, Rhode Island; and her desire to relocate to Florida to live with her mother in a three-bedroom single-family dwelling, in a gated community with a pool. Krikorian testified that her mother, C.K.'s maternal grandmother, was her primary support system and that, since her mother's move to Florida, Krikorian has found it difficult to manage as a single mother of two. Krikorian also testified that her brother and sister, and their families, live in Rhode Island. Leon testified that his family, both immediate and extended, live in Rhode Island and Massachusetts, and that C.K. sees that side of her family twice per month.

Krikorian testified about a job offer she received from a company in Florida. She stated that the move would enable her to provide for her children, including private school for C.K. Although Krikorian testified that she had been unsuccessful in her efforts to find comparable employment in Rhode Island, she failed to demonstrate that she had attempted to secure a job prior to the filing of the motion to relocate. Krikorian also recounted that Leon agreed to allow C.K. to keep Krikorian's surname so long as Krikorian dropped the issue of child support,

retroactive support, and medical bills.[2] During cross-examination, Krikorian acknowledged that Leon provides health insurance through his employer.

Krikorian testified as to the parties' tumultuous verbal communications during visitation pick-up and drop-off, and through e-mail and text messages, which at times concerned the care of C.K. These included an event in which Leon called Krikorian a "bitch" in front of her son and a circumstance in which Leon attempted to awaken C.K. from a nap by throwing her in the air, shaking her, and "blast[ing]" music. Several exhibits concerning these occurrences were presented during trial. While Krikorian testified that she "fear[s] for [C.K.]" because of Leon's behavior, she was nonetheless willing to commit to a suitable visitation schedule if she were to relocate, and to further accommodate Leon's efforts to retain his relationship with C.K., including her waiving child support so that he could use that money to visit C.K. in Florida, and her bringing C.K. to Rhode Island during vacation time.

Leon acknowledged that he agreed to the relocation if Krikorian paid him $50,000, but he explained that this offer was intended to cover the cost of his travel to visit with C.K. if she relocated to Florida. Nonetheless, he was opposed to the move because he has a "great bond" with his daughter, sees her on a regular basis,

---

[2] While testimony revealed that Leon was not paying child support either by order or voluntarily, there was a court order stating that the issue of child support would be left "open" in exchange for Leon "agreeing to allow [C.K.] to keep the last name of Krikorian[.]"

is "very involved in her life," and "want[s] to be there for her[,]" all of which would be adversely impacted if C.K. were to move to Florida.

On December 16, 2019, the trial justice issued a written decision on the motion to relocate. After summarizing the witnesses' testimony, the trial justice reviewed and applied the factors identified in *Dupré v. Dupré*, 857 A.2d 242 (R.I. 2004), and in *Pettinato v. Pettinato*, 582 A.2d 909 (R.I. 1990), to determine if relocation was in the best interests of the child. The trial justice made findings of fact and concluded that "[Krikorian] has failed to demonstrate to the [c]ourt that [C.K.'s] best interest would be satisfied by relocation to the State of Florida[.]" As a result, he denied Krikorian's motion to relocate to Florida, entering an order to that effect. Krikorian filed a timely appeal.

**Standard of Review**

"On review, this Court will not disturb the findings of fact made by a justice of the Family Court with respect to the issue of custody and the best interests of the child unless the hearing justice abused his or her discretion in making such findings." *Andrade v. Andrade*, 252 A.3d 755, 760 (R.I. 2021) (quoting *DePrete v. DePrete*, 44 A.3d 1260, 1270 (R.I. 2012)). "We will affirm the trial justice's award concerning custody and the best interests of the child unless his or her 'factual findings overlooked or misconceived material evidence or were clearly wrong.'" *Id.* (quoting *DePrete*, 44 A.3d at 1270).

**Analysis**

On appeal, Krikorian avers that the trial justice ignored the uncontradicted evidence that Leon's primary motive in contesting her motion to relocate was his own pecuniary gain, as well as Leon's agreement to forgo his "demand" to change C.K.'s surname to his own in exchange for not having to pay child support. Krikorian further asserts that the trial justice ignored Leon's "obstructive and nasty conduct" toward Krikorian and C.K., which included calling Krikorian names, responding to her inquiries about C.K.'s physical state with "demeaning" and "rude" comments, and throwing C.K. in the air and blasting music to wake her from naps. In addition, Krikorian argues that the evidence was uncontradicted that the relocation would provide her with access to a family-support network and economic opportunities, neither of which are available to her in Rhode Island. Finally, Krikorian asserts that the trial justice ignored her offers to preserve the relationship between Leon and C.K. with suitable visitation, including an offer to forgo child support to allow for travel to Florida for visits with C.K.

In *Dupré*, this Court articulated the relevant factors to be considered in determining whether to grant a motion to relocate. *Dupré*, 857 A.2d at 257-59. Additionally, we determined that "[i]t is the trial justice who is in the best position to determine what factors [regarding relocation] may be relevant on a case-by-case basis, and his or her discretion in this regard should not be unduly constrained." *Id.*

at 257. "[T]he trial justice need not refer to every piece of evidence, rather [the trial justice] must refer to the specific evidence that prompted his [or her] decision." *Saltzman v. Saltzman*, 218 A.3d 551, 558 (R.I. 2019) (brackets omitted) (quoting *H.J. Baker & Bro., Inc. v. Orgonics, Inc.*, 554 A.2d 196, 202 (R.I. 1989)). However, "the 'paramount consideration' in relocation cases is the best interests of the child[.]" *DePrete*, 44 A.3d at 1271 (emphasis omitted) (quoting *Dupré*, 857 A.2d at 252).

In *Dupré*, the Court held

> "that parties either seeking or opposing the relocation of their minor children should present relevant evidence concerning the following factors so that the court may make appropriate findings:
>
> "(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent. * * *
>
> "* * *
>
> "(2) The reasonable likelihood that the relocation will enhance the general quality of life for both the child and the parent seeking the relocation, including, but not limited to, economic and emotional benefits, and educational opportunities. * * *
>
> "(3) The probable impact that the relocation will have on the child's physical, educational, and emotional development. Any special needs of the child should also be taken into account in considering this factor. * * *
>
> "(4) The feasibility of preserving the relationship between the non-relocating parent and child through

suitable visitation arrangements, considering the logistics and financial circumstances of the parties. * * *

"* * *

"(5) The existence of extended family or other support systems available to the child in both locations. * * *

"(6) Each parent's reasons for seeking or opposing the relocation.

"* * *

"(7) In cases of international relocation, the question of whether the country to which the child is to be relocated is a signatory to the Hague Convention on the Civil Aspects of International Child Abduction will be an important consideration.

"(8) To the extent that they may be relevant to a relocation inquiry, the *Pettinato* factors also will be significant."[3] *Dupré*, 857 A.2d at 257-59.

---

[3] The Court in *Pettinato v. Pettinato*, 582 A.2d 909 (R.I. 1990) set out eight factors to consider in determining the best interests of the child for purposes of child-custody awards; those factors are:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

The trial justice weighed each of the relevant *Dupré* factors in arriving at his decision.[4] First, he considered that Krikorian enjoys physical placement; yet he found that "[b]oth parties have been involved with the rearing of the minor child[.]" *See Dupré*, 857 A.2d at 257 (providing that this factor—being in the "sound discretion of the trial justice"—involves an assessment of custodial responsibilities and "requires an examination of the quality of the relationship that the child enjoys with each parent"). Second, the trial justice found "little, if any, evidence that the proposed relocation would enhance the general quality of life for either [Krikorian] or the minor child." Although Krikorian argues that the trial justice ignored the uncontradicted evidence that the relocation would provide her with economic opportunities not available to her in Rhode Island, the trial justice was clearly not convinced that Krikorian's job offer supported this factor; indeed, he noted the "lack[] [of] any type of concrete [job] description[.]" The trial justice

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Pettinato*, 582 A.2d at 913-14 (footnotes omitted).

[4] Factor seven was not at issue in this case, because the proposed relocation was not international.

- 10 -

also made note that Krikorian owns a home in Warwick that is mortgage-free. In addition, the trial justice found that Krikorian presented little evidence, if any, of the probable impact that the move to Florida would have on C.K.'s physical, educational, and emotional development.

While Krikorian asserts that the trial justice overlooked the evidence of her willingness to preserve the relationship between Leon and C.K. with suitable visitation and to forgo child support for Leon's use of those funds to travel to Florida, as set out *supra*, "the trial justice need not refer to every piece of evidence[.]" *Saltzman*, 218 A.3d at 558 (quoting *H.J. Baker & Bro., Inc.*, 554 A.2d at 202). As required, the trial justice in the present case "refer[red] to the specific evidence that prompted his decision[,]" *id.* (quoting *H.J. Baker & Bro., Inc.*, 554 A.2d at 202), which was Krikorian's unemployment status and Leon's salary.

Krikorian also contends that the trial justice ignored the uncontradicted evidence that relocation would provide her with access to a family-support network. However, it is incumbent upon the Family Court justice to look to the support systems in both locations, as did the trial justice in this matter when he found that C.K.'s extended family members lived in both Rhode Island and Massachusetts, including a number of C.K.'s Rhode Island based family members on both sides, with whom she interacts on a regular basis.

Although Krikorian argues that the evidence was *uncontradicted* that Leon's primary motive in contesting her motion to relocate was for his own pecuniary gain, Leon testified to having a bond with his daughter that he sought to maintain, and the trial justice found his objection to the relocation to be sincere. This finding of credibility is one that rests "within the sound discretion of the trial justice." *Guertin v. Guertin*, 870 A.2d 1011, 1020 (R.I. 2005). Critically, notwithstanding Krikorian's testimony that she would make efforts to promote a continuous relationship between her daughter and Leon, the trial justice "was not convinced[,]" considering "the history this case has endured since its inception."

We disagree with Krikorian's contention that the trial justice ignored Leon's "obstructive and nasty conduct" toward her and C.K. The trial justice noted the parties' "acrimonious involvement" and disagreements regarding child-rearing techniques. However, because the paramount consideration was the best interest of C.K., he chose not to focus on the petty disputes between the parties. We cannot say that this was error, in light of the fact that Krikorian did not seek a finding that Leon was an unfit parent and was more than willing to preserve the relationship between Leon and C.K. in the event of a move to Florida, including waiving child support. Thus, we are of the opinion that there was no error in the trial justice's decision to ignore Krikorian's allegations of Leon's alleged "obstructive and nasty conduct" as a factor weighing in favor of relocation.

Lastly, we address Krikorian's averment that the trial justice ignored Leon's willingness to forgo his "demand" to change C.K.'s surname to his own in exchange for not paying child support. While certainly of concern, Krikorian's "agree[ment] to leave child support open" for this purpose is equally concerning. It is well established that suspension of child support for such an indefinite period of time runs "contrary to the public policy of caring for the welfare of the minor child[.]" *Hartwich v. Hartwich*, 82 R.I. 54, 59, 105 A.2d 821, 824 (1954). Child support is not a bartering tool; it is to maintain the child's standard of living. We therefore direct that the issue of child support be addressed in the Family Court.

We are satisfied that the trial justice clearly considered the relevant *Dupré* factors and "refer[red] to the specific evidence that prompted his decision[,]" *Saltzman*, 218 A.3d at 558, and, thus, "we accord great deference to the sound discretion of the trial justice in assessing and weighing these factors[.]" *Andrade*, 252 A.3d at 762 (quoting *Saltzman*, 218 A.3d at 558). The trial justice "is in the best position to determine what factors may be relevant on a case-by-case basis[,]" *Saltzman*, 218 A.3d at 558 (quoting *Ainsworth v. Ainsworth*, 186 A.3d 1074, 1083 (R.I. 2018)), and the trial justice in this case found that the *Dupré* factors did not weigh in favor of C.K.'s best interests. Therefore, we conclude that the trial justice did not overlook or misconceive material evidence in denying the motion to relocate.

## Conclusion

For the foregoing reasons, we affirm the order of the Family Court. The record in this case may be remanded to the Family Court for further proceedings consistent with this opinion.

Justice Lynch Prata did not participate.



STATE OF RHODE ISLAND

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Kenneth Leon v. Marysol Krikorian. |
| **Case Number** | No. 2020-28-Appeal. <br> (P 17-412M) |
| **Date Opinion Filed** | April 6, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice John E. McCann, III |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Timothy J. Robenhymer, Esq. |
| | For Defendant: <br><br> Lauren E. Jones, Esq. <br> Evan M. Kirshenbaum, Esq. |