HALLIWELL ASSOCIATES,
INC., et al.

v.

C. E. MAGUIRE SERVICES, INC.

No. 88–605–Appeal.

Supreme Court of Rhode Island.

Feb. 1, 1991.

Joel D. Landry, Thomas F. Connors, Connors & Kilguss, Providence, for plaintiffs.

George Salem, Dorothy S. Davison, Coffey & Martinelli, Ltd., Providence, for defendant.

OPINION

KELLEHER, Justice.

On April 23, 1983, the plaintiffs, Halliwell Associates, Inc., of Massachusetts, Halliwell Associates, Inc., of Rhode Island,[1] J. Clifford Halliwell, and John L. Halliwell filed suit in the Rhode Island Superior Court seeking to recover for services allegedly rendered by Halliwell Associates, Inc., of Massachusetts to C. E. Maguire Services, Inc. (Maguire), during the course of a joint project involving the construction of sewers for the city of Fall River, Massachusetts (city). At the conclusion of the litigation, the jury returned a verdict in favor of the plaintiffs in the amount of $150,000 plus prejudgment interest. Maguire then filed this timely appeal.

A brief recitation of the relevant facts is in order before reaching the merits of Maguire's appeal. Halliwell Associates, a privately held engineering consulting firm, was incorporated as a business corporation in Massachusetts on June 19, 1975. John L. Halliwell and J. Clifford Halliwell were the sole stockholders. After its formation in 1975, Halliwell Associates entered into a contract with the city to design and construct lateral sewers for the city on a street-by-street basis as funds became available. Following the expiration of this contract in 1976, Halliwell Associates entered into a second contract with the city that was set to expire in April 1978.

1. The complaint filed in Superior Court originally listed both Halliwell Associates, Inc., of Massachusetts and Halliwell Associates, Inc., of Rhode Island as the plaintiffs in the action. Apparently, however, Halliwell Associates, Inc., of Rhode Island voluntarily withdrew from the litigation since it was not a party to any of the alleged contracts in question and, indeed, was not incorporated in Rhode Island until May 1981, long after all activities in furtherance of the sewer-construction project between Halliwell Associates, Inc., of Massachusetts and C. E. Maguire Services, Inc., had ceased. Therefore, Halliwell Associates shall hereafter refer to the Massachusetts corporation.

While Halliwell Associates's sewer construction efforts proceeded, Maguire, a Rhode Island corporation, was also engaged in other unrelated design and engineering projects with the city. Maguire had entered into a contract with the city to design a pumping station and waste-water-treatment facility for use with the city's sewage system. To fund this project, Maguire sought to procure federal grant moneys through the Environmental Protection Agency (EPA) that were available to municipalities for sewage projects. Although the city was the actual entity applying for the funds, municipalities were allowed to hire engineering consulting firms like Maguire to prepare and process the application for the funds.

In 1978 the city expressed interest in receiving EPA funds to help finance the lateral-sewer project that Halliwell Associates was currently working on. Consequently the city asked Maguire to submit an addendum to its original EPA application that would include a request for funds for the lateral-sewer project. With these added federal funds, the entire city could be resewered in a shorter period than was required by Halliwell Associates employing the street-by-street method then in use. The EPA grant application for the lateral sewers was to be a joint undertaking between Halliwell Associates and Maguire.

Accordingly, on February 23, 1977, Maguire and Halliwell Associates executed a document entitled "Letter of Intent" that stated that the parties would jointly pursue a contract with the city for the design and subsequent construction inspection of lateral sewers. The letter stated that if the sewer-design contract was awarded to Maguire by the city, 20 percent of the fee received would go to Maguire and the remaining 80 percent would go to Halliwell Associates as a subcontractor. The terms of the letter of intent stated that the use of Maguire and Halliwell Associates on the project was subject to the approval of the city, the EPA, and the Massachusetts Division of Water Pollution Control. However, the document did not indicate that either party would receive any funds prior to an executed contract among the city, Halliwell Associates, and Maguire.

Both Maguire and Halliwell Associates began work on the EPA application and diligently supplied the EPA with supplemental information as it was requested by the EPA throughout the course of the application process. Unfortunately, however, during the time the application was pending, Halliwell Associates encountered difficulties with another project on which it was working for the city. The city terminated its existing contract with Halliwell Associates. As a result, it became readily apparent that the city would undoubtedly reject Halliwell Associates as a subcontractor on the lateral-sewer project.

Shortly thereafter, on January 10, 1978, representatives of Halliwell Associates and Maguire met to assess their situation. Both parties agreed that Halliwell Associates would withdraw from the lateral-sewer project and that the parties would attempt to work together on future projects. In addition there was some discussion about compensating Halliwell Associates for the design drawings it had completed and submitted up until that time. After reviewing the design drawings twice, Maguire determined they could not be used and therefore did not pay Halliwell Associates for them.

In 1982 the EPA approved the grant application, and Maguire and the city entered into a contract. In June 1982 Halliwell Associates presented a bill to Maguire for its services. Halliwell Associates demanded $51,841.62 for the grant-application work and $98,386 for its design drawings. When Maguire refused to honor Halliwell Associates's request for payment, the litigation in Superior Court ensued.

At trial, at the close of Halliwell Associates's case, Maguire moved for a directed verdict on four grounds. We believe, however, that our attention need only focus on one, namely, that Halliwell Associates, J. Clifford, and John L. Halliwell were precluded from bringing suit against Maguire as a matter of law. Both parties agree that since Halliwell Associates is a Massachusetts corporation, Massachusetts law

governs the capacity of a Massachusetts corporation or its shareholders to sue or be sued.

Before embarking upon our analysis, there is an additional fact that is worthy of mention. The Massachusetts business-corporation statutes empower the Massachusetts Secretary of State to dissolve a corporation upon petition to the Massachusetts Supreme Judicial Court. *See* Mass. Gen. Laws Ann. ch. 156B, § 101 (West 1970). A corporation can be involuntarily dissolved if, among other reasons, it fails to comply with laws requiring the filing of reports with the Secretary of State or tax returns with the commissioner of corporations and taxation. *Id.* Apparently Halliwell Associates did not comply with the former provision because in early January 1979, Halliwell Associates was involuntarily dissolved by the Commonwealth because of Halliwell Associates's failure to file its annual reports with the Secretary of State.

In addition, Mass. Gen. Laws Ann. ch. 156B, § 102, as it existed at the time of Halliwell Associates's dissolution, provided:

"Every corporation whose corporate existence for other purposes is terminated (1) by dissolution under the provisions of section ninety-nine, one hundred, or one hundred and one, (2) by the expiration of the period for its duration limited by its articles of organization, or (3) in any other manner, *shall nevertheless be continued as a body corporate for three years after the time when its existence is terminated, for the purpose of prosecuting and defending suits by or against it and of enabling it gradually to settle and close its affairs, to dispose of and convey its property and assets remaining after the payment of its debts and obligations, but not for the purpose of continuing the business for which it was established;* provided, that the corporate existence of such a corporation, for the purposes of any suit brought by or against it prior to the commencement of, or during, said period of three years, shall continue beyond said period for a further period of ninety days after the final judgment in the suit." (Emphasis added.)

Pursuant to the dictates of this section, since Halliwell Associates was involuntarily dissolved on January 10, 1979, any action by Halliwell Associates against Maguire had to be instituted by January 10, 1982.

At trial, upon Maguire's motion for a directed verdict, the trial justice properly dismissed Halliwell Associates of Massachusetts from the suit because the action against Maguire was instituted on April 23, 1983, long after the three-year windup period provided for in Mass. Gen. Laws Ann. ch. 156B, § 102 had expired. The trial justice, however, refused to dismiss the individual shareholders, J. Clifford and John L. Halliwell, on this basis. Consequently the case was submitted to the jury, resulting in a verdict adverse to Maguire.

Maguire now argues that Mass. Gen. Laws Ann. ch. 156B, § 102 also bars J. Clifford and John L. Halliwell from bringing suit either in their individual capacities or as shareholders of Halliwell Associates. Maguire thus asserts that the trial justice's refusal to dismiss J. Clifford and John L. Halliwell on this basis upon Maguire's motion for a directed verdict was erroneous as a matter of law. Not surprisingly, the Halliwells vigorously argue that all assets of a dissolved corporation, including causes of action, descend to its shareholders, who become vested with legal title to those assets. Accordingly the Halliwells contend that the trial justice did not commit error in submitting the case to the jury because the Halliwells were now the holders of a claim of action against Maguire for services rendered to it by Halliwell Associates, regardless of the three-year limitation period contained in Mass. Gen. Laws Ann. ch. 156B, § 102. Since the trial justice's refusal to dismiss the Halliwells' claim was purely a question of law, it will not be overturned unless we determine that the trial justice misapplied the governing Massachusetts law.

At common law the legal dissolution of a corporation marked the death of its corporate existence and, in the absence of statutory provisions to the contrary, terminated that existence for *all* purposes whatsoever.

See 16A Fletcher, *Cyclopedia of the Law of Private Corporations* § 8113 at 358 (1988). Accordingly a corporation's capacity to sue or be sued was completely destroyed upon dissolution. *Id.* § 8142 at 436. The end result of the common-law dissolution rule was that debts due either by or to the corporate body were extinguished, and creditors of the corporation were left without recourse to collect debts owed to them by the corporation. *Id.* § 8127 at 387. Today, all jurisdictions have enacted corporate-survival statutes that abrogate the harsh effect of the common-law rule by allowing a corporation's existence to continue for some time past the date of dissolution to settle its corporate affairs gradually, but not to continue its business.

Massachusetts courts have not yet interpreted their corporate survival statute in the context of addressing the question of whether shareholders of a dissolved corporation can bring action on an unasserted-corporate-contract claim after the survival statute's windup period has expired. This question, however, has been addressed on several occasions by courts in other jurisdictions that have survival statutes similar to that found in Massachusetts. Thus, looking to the treatment that the courts of other jurisdictions have afforded their survival statutes will undoubtedly assist us in our present analysis. Indeed, Massachusetts courts have indicated that when a Massachusetts statute is similar to a statute in another jurisdiction, even though it may not be identical, a consideration of the foreign jurisdiction's law, including judicial decisions, is appropriate, though by no means binding. *See Piemonte v. New Boston Garden Corp.,* 377 Mass. 719, 723, 387 N.E.2d 1145, 1148 (1979).

An examination of case law from other jurisdictions reveals that there are two types of actions that arise during the period of corporate existence but survive past the windup period of the survival statute. The first are those actions that are brought in an individual capacity for a personal wrong. *See Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 432 (7th Cir.1988)(holding shareholder third-party beneficiaries to corporate contract have individual breach-of-contract claim). Indeed, when a claim is held individually by a shareholder of a dissolved corporation, even if the claim arose from a corporate matter, the corporate survival statute is not even applicable. *See id.* at 435. If, on the other hand, an action seeks to redress a wrong done to the corporation, or if the claim arises solely as a consequence of a corporate wrong, the claim is derivational in nature and will not survive past the windup period. As the court in *Hunter* explained:

> " 'Where there is no showing that plaintiff himself had been injured in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation, and a stockholder may not seek relief on his own behalf. However, this general principle has no application where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders.' " *Id.* at 432.

■ Applying this standard to the facts before us, we feel it is clear that the Halliwells' claim against Maguire is one held derivatively and not individually. The Halliwells' assertion that "[n]othing is sought on behalf of the dissolved corporation" misstates the very nature of their claim. The letter of intent executed by Halliwell Associates and Maguire was entered into for the benefit of Halliwell Associates as a corporation and not J. Clifford and John L. Halliwell as individuals. The Halliwells have not shown that they have been injured in any capacity "other than in common." Furthermore the Halliwells have made no showing that they were third-party beneficiaries of the alleged Halliwell Associates—Maguire contract with special obligations owed to them as individuals as was the case in *Hunter.* Except for the rights of the dissolved Halliwell Associates under the alleged contract, the Halliwells, as individuals, have no contract rights of their own that can now be asserted against Maguire. Thus any claim they may have against Maguire must be brought deriva-

tively as shareholders of the dissolved corporation.

■ The second type of action that arises from the period of corporate existence but endures past the survival statute's windup period are those involving ascertainable or previously asserted claims that have the character of a tangible property asset and which have devolved by law or have been assigned to the shareholders. *See, e.g., Hutson v. Fulgham Industries, Inc.,* 869 F.2d 1457 (11th Cir.1989); *Jenot v. White Mountain Acceptance Corp.,* 124 N.H. 701, 474 A.2d 1382 (1984)(holding shareholder of dissolved corporation could, after windup period expired, foreclose on mortgage once held by corporation). As the Halliwells vigorously assert, Massachusetts courts have long recognized the rights of former shareholders of a dissolved corporation to succeed, in their individual capacities, to assets owned by the corporation prior to its dissolution. *See, e.g., Everett Credit Union v. Allied Ambulance Services, Inc.,* 12 Mass. App. 343, 348, 424 N.E.2d 1142, 1146 (1981). As Fletcher states in his treatise on corporations:

"On the dissolution of * * * a corporation, whether by expiration of its charter, by a judgment of forfeiture, or otherwise, it is considered in equity, even in the absence of any statute, that its assets are held for the benefit of its stockholders or members, after payment of its debts, and will be so distributed by a court of equity when no other mode of distribution is provided by statute." 16A Fletcher, § 8134 at 411.

Even in cases in which a corporate-survival statute exists, courts do not construe them as supplanting the equitable rule that former shareholders succeed to the assets of a dissolved corporation. *See, e.g., Jenot,* 124 N.H. at 708, 474 A.2d at 1386.

If we assume then that the Halliwells have succeeded to the corporate assets of the dissolved Halliwell Associates, the key inquiry is whether Halliwell Associates's breach-of-contract claim against Maguire is a corporate asset that devolved to the Halliwells by operation of law. This same question was addressed recently by the United States Court of Appeals for the Eleventh Circuit in *Hutson v. Fulgham Industries, Inc.,* 869 F.2d 1457 (11th Cir.1989). There the appellant, Hutson, was the president and 50 percent shareholder of Foresco, Inc. (Foresco). *Id.* at 1458. In April 1979 appellee Fulgham Industries, Inc. (Fulgham) had entered into an agreement with Foresco wherein Foresco was to provide designs that Fulgham would use in manufacturing cranes. *Id.* For unrelated reasons, Hutson later initiated voluntary proceedings to dissolve Foresco and obtained a dissolution decree on October 1, 1984. *Id.* at 1459. On May 19, 1987, Hutson filed suit in Alabama State Court against Fulgham to collect payments allegedly owed under the 1979 agreement. *Id.* At the time of the litigation the question of whether each of the parties had fully performed under the contract was in dispute. *See id.* at 1458. When the case was removed to Federal Court, Fulgham filed a motion for summary judgment, arguing, as Maguire does here, that Hutson's claims were precluded because they were not asserted prior to or during the two-year windup period following dissolution as provided by Alabama's dissolution statute. *Id.* at 1459. When the District Court agreed with Fulgham and entered summary judgment in its favor, Hutson appealed. *Id.*

The Eleventh Circuit Court of Appeals began its analysis by pointing out that although Alabama has enacted a corporate-survival statute, it does not supplant the equitable rule that shareholders succeed to certain classes of a dissolved corporation's assets. *Id.* at 1460. The court further noted that, as the Halliwells assert, shareholders of the dissolved corporation may then maintain an action to recover such assets beyond the statutory windup period. *Id.* (citing *Jenot,* 124 N.H. at 708, 474 A.2d at 1386). The court was careful to point out, however, that the classes of assets that courts have held devolve to shareholders upon dissolution are primarily interests in either tangible real and personal property, corporate claims asserted within the windup period, fixed liabilities, or liqui-

dated debts. *Hutson*, 869 F.2d at 1461, 1463 n.14.

As in the present case, the court in Hutson recognized that whether Hutson could assert claims based on the contract between Foresco and Fulgham depended upon whether an unasserted corporate claim is a legally recognized property right that devolves to shareholders upon dissolution under the equitable rule. *Id.* at 1462. Like the Halliwells, Hutson placed great emphasis on the holding of *Jenot.* Although the court in *Hutson* agreed with that holding, the court was unwilling to extend the equitable rule so far as to recognize a property interest in an "unasserted corporate contract claim which involves evidentiary problems and factual disputes." *Hutson*, 869 F.2d at 1463.

We find the reasoning of the court in *Hutson* to be persuasive. In enacting a survival statute, the Massachusetts Legislature sought to strike a balance between two competing legal principles; first, the rights of shareholders of a dissolved corporation to succeed to the assets of the corporation upon dissolution and, second, the implementation of an orderly and definite means of winding up the affairs of a dissolved corporation. Massachusetts has chosen to strike this balance at the expiration of three years following dissolution. All derivative shareholder claims must be instituted before the expiration of this three-year period or are forever barred. Although the expiration of the three-year period will not bar shareholders' attempts to recover their share of the dissolved corporation's assets under the equitable rule,[2] it is doubtful that Massachusetts courts

would find a legally recognizable property interest in an unasserted-corporate-contract claim. We believe that allowing such suits to proceed after the expiration of the wind-up period would render the limitation contained in the Massachusetts survival statute a nullity, barring nothing. Other courts have reached the same conclusion. *See, e.g., Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1187 (7th Cir.1980); *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F.Supp. 549, 552 (D.S.D.1989). Indeed, as one court has stated:

" 'The policy behind the [survival] statute is favored over the ends of particularized justice.' * * * To allow lawsuits involving a dissolved corporation to commence in contravention of a clearly expressed legislative policy would thwart the orderly process of corporate dissolution conceived by that policy. It would 'produce a continuous dribble of business activity contrary to the intent of the winding up provisions of the statute.' " *MBC, Inc. v. Engel,* 119 N.H. 8, 12, 397 A.2d 636, 639 (1979).

In light of the foregoing reasons the judgment of the Superior Court is vacated, and the case is remanded to the Superior Court for entry of judgment in favor of Maguire.

**2.** In its brief and at oral argument, Maguire argues that the Halliwells could not maintain their cause of action against Maguire because there was no showing at trial that the assets of the dissolved corporation passed to them by written assignment or pursuant to Mass. Gen. Laws Ann. ch. 156B, § 103 (West 1970)(governing distribution of dissolved corporation's assets to shareholders within windup period). As was noted earlier, however, such statutes do not supplant the operation of the equitable rule *after* the windup period has expired. Furthermore we agree with the Halliwells' contention that under Massachusetts law a corporation need not formally assign its assets to its share-

holders during the windup period since the equitable rule automatically makes such transfer upon the expiration of the windup period. *See Hutson v. Fulgham Industries, Inc.,* 869 F.2d 1457, 1463 n.15 (11th Cir.1989); *Everett Credit Union v. Allied Ambulance Services, Inc.,* 12 Mass. App. 343, 348, 424 N.E.2d 1142, 1146 (1981); *Jenot v. White Mountain Acceptance Corp.,* 124 N.H. 701, 704, 708–09, 474 A.2d 1382, 1386 (1984). This court is of the opinion, however, that unasserted-corporate-contract claims are simply not within the ambit of the equitable rule and therefore do not devolve to shareholders as assets of the dissolved corporation.