USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit _________________________ _________________________ No. 95-1206 JOAO CARREIRO, INDIVIDUALLY AND AS  ADMINISTRATOR OF THE ESTATE OF TERESA V. CARREIRO, Plaintiff, Appellant, v. RHODES GILL AND CO., LTD., ET AL., Defendants, Appellees. __________________________ __________________________ No. 95-1239 JOAO CARREIRO, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF  TERESA V. CARREIRO, Plaintiff, Appellee, v. RHODES GILL AND CO., LTD., ET AL., Defendants, Appellees, _________________________ _________________________ MAIN MACHINERY COMPANY, Defendant, Appellant. _________________________ _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS  [Hon. Robert E. Keeton, United States District Judge] ____________________________ [Hon. Richard G. Stearns, United States District Judge] ____________________________ _________________________ _________________________ _________________________ _________________________ Before Selya and Stahl, Circuit Judges, ______________ and Gorton,* District Judge. ______________ _________________________ _________________________ Paul A. Epstein with whom Spillane & Epstein was on brief ________________ __________________ for Joao Carreiro. Judith A. Perritano with whom Joel F. Pierce and Morrison, ____________________ ______________ _________ Mahoney & Miller were on brief for Main Machinery Company and H. ________________ Leach Machinery Company.  Robert D. Fine with whom Licht & Semonoff was on brief for ______________ _________________ Barry G. Hittner, Receiver of Rumford Property and Liability Insurance Company. Jeanne O'Leary McHugh with whom Law Offices of Bruce R. Fox ______________________ ___________________________ was on brief for The Robbins Company. _________________________ _________________________ November 1, 1995  November 1, 1995 _________________________ _________________________ _____________________ _____________________ *Of the District of Massachusetts, sitting by designation.  STAHL, Circuit Judge. These appeals arise from a STAHL, Circuit Judge. _____________ product liability and wrongful death suit brought by appellant Joao Carreiro, whose wife Teresa was killed while operating a machine press at The Robbins Company ("Robbins"). Carreiro sued Rhodes Gill & Co., Ltd. ("Rhodes"), the English manufacturer of the machine; H. Leach Machinery Company ("Leach"), the dissolved domestic distributor of the machine; Main Machinery Company ("Main"), the alleged successor corporation to Leach; and Rumford Property and Liability Insurance Company ("Rumford")1, Leach's insurance carrier. Rhodes failed to answer the complaint and defaulted. The district court granted summary judgment for Leach, holding that it was not amenable to suit because it terminated its corporate existence long before the accident. The court then dismissed Rumford, ruling that there can be no direct action against the insurer of a dissolved corporation under the applicable Rhode Island statute. The court granted summary judgment for Main, finding that it was not the successor to Leach. Carreiro appeals those rulings, which we now affirm. Main impleaded Robbins, who had contractually indemnified Leach when it purchased the press. The district court found that Main was not a successor to Leach and granted summary judgment for Robbins on Main's third-party claim. Because we  ____________________ 1. Rumford is in receivership and is represented in this action by its receiver, Barry G. Hittner. -3- 3 affirm summary judgment for Main on Carreiro's claim, Main's appeal of the ruling in favor of Robbins is moot. I. I. __ BACKGROUND BACKGROUND __________ A. Overview ____________ In reviewing the several rulings appealed from, we first offer this brief factual overview. On March 7, 1988, Teresa Carreiro was operating a "New Stamp-Matic" machine press while employed at the Robbins Company in Attleboro, Massachusetts. During operations, a piece of a die broke off, penetrated a plexiglass guard and struck Ms. Carreiro in the neck, inflicting a fatal injury.  Rhodes manufactured the allegedly defective "New Stamp-Matic" press in England. Leach, a seller of new and used machine tools and the authorized United States distributor for Rhodes, sold it to Robbins in 1980. In 1980, several members of the Leach family who were shareholders and/or officers of Leach started a new corporation, Main Machinery Co., which continued in the business of selling new and used machine tools, including "New Stamp-Matic" presses manufactured by Rhodes. Subsequently, in 1982, Leach dissolved, a full six years before the accident. B. Prior Proceedings  _____________________ In February 1991, Joao Carreiro, individually and as administrator of the estate of Teresa Carreiro, filed a -4- 4 diversity complaint for product liability and wrongful death in the United States District Court for the District of Massachusetts against Rhodes, Leach, Main and Rumford. Main impleaded Robbins as a third-party defendant based on a preexisting indemnification agreement between Leach and Robbins. Rhodes failed to answer the complaint and defaulted. Leach moved to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) in April 1991, asserting that it lacked the capacity to be sued because dissolution had terminated its corporate existence. The district court deferred ruling on Leach's motion to dismiss in order to permit discovery by Carreiro on Leach's claimed dissolution. Meanwhile, Rumford filed a Rule 12(b)(6) motion to dismiss contending that, because the dissolved Leach lacked capacity to be sued, Rumford could not be sued under Rhode Island's direct action statute. In March 1992, Leach renewed its motion to dismiss, submitting as support the Rhode Island Secretary of State's certificate averring that Leach had dissolved on March 25, 1982. In April 1992, Rumford renewed its motion to dismiss, again based on Leach's dissolution. In an August 31, 1992, order, the district court, Robert E. Keeton, J., granted Leach's and Rumford's motions to dismiss,2 finding no basis  ____________________ 2. The district court treated Leach's motion to dismiss as a motion for summary judgment under Fed R. Civ. P. 56 because Leach had presented material outside the pleading. See Fed. ___ R. Civ. P. 12(b). -5- 5 for Carreiro's request for further discovery on Leach's dissolution. In April 1994, Main moved for summary judgment, claiming that it was not liable as a successor corporation to Leach. Main and Robbins also filed cross-motions for summary judgment on the issue of Robbins' liability to Main based on Robbins' agreement to indemnify Leach. The district court, Richard G. Stearns, J., found that Main was not the successor to Leach and granted summary judgment for Main on Carreiro's claims. In the same order, Judge Stearns granted summary judgment for Robbins on Main's third-party claim, ruling that Main could not benefit from Robbins' contractual obligation to indemnify Leach because Main was not Leach's successor. These appeals ensued. II. II. ___ DISCUSSION DISCUSSION __________ Joao Carreiro raises four principal arguments on appeal: (1) genuine factual issues exist as to whether Main is liable as a successor corporation to Leach; (2) the district court erred in not allowing further discovery on whether Leach had been properly dissolved; (3) Rhode Island's two-year survival period for claims against a dissolved corporation does not preclude this tort action against Leach even though the accident occurred six years after its dissolution; and (4) the Rhode Island statute allowing -6- 6 certain direct actions against the insurer of a deceased natural person applies as well to the insurer of a dissolved corporation. After setting forth the applicable standards of review, we discuss each issue in turn. A. Standards of Review _______________________ 1. Summary Judgment for Main, Leach and Robbins ________________________________________________ We review a grant of summary judgment de novo, in __ ____ accordance with our usual standard. See, e.g., Crawford v. ___ ____ ________ Lamantia, 34 F.3d 28, 31 (1st Cir. 1994), cert. denied, 115 ________ _____ ______ S. Ct. 1393 (1995); Woods v. Friction Materials, Inc., 30 _____ _________________________ F.3d 255, 259 (1st Cir. 1994).  2. Rule 12(b)(6) Dismissal of Rumford _____________________________________ We review a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) de novo, accepting all __ ____ well-pleaded facts as true and drawing all reasonable inferences in favor of the party dismissed. Washington Legal ________________ Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st ______ _________________________ Cir. 1993). We will not accept a plaintiff's unsupported conclusions or interpretations of law. Id. We may affirm ___ the district court's order on any independently sufficient grounds. Id. -7- 7 3. Denial of Discovery Request ______________________________ The trial judge has broad discretion in ruling on pre-trial management matters. Fusco v. General Motors Corp., _____ ____________________ 11 F.3d 259, 267 (1st Cir. 1994). We review a district court's ruling on a discovery request under Fed. R. Civ. P. 56(f) by a party opposing summary judgment for abuse of that considerable discretion. Price v. General Motors Corp., 931 _____ ____________________ F.2d 162, 164 (1st Cir. 1991).  B. Successor Liability of Main _______________________________ 1. Relevant Facts on the Summary Judgment Record ________________________________________________ Viewed most favorably to Carreiro, the facts of record3 relevant to the successor liability question are as follows. Leach sold the allegedly defective machine press to Robbins, Carreiro's employer, in 1980. Leach, a Rhode Island corporation, was originally owned and operated by Harry Leach and his sons Oscar and Max. After Harry Leach's death, Oscar, Max, and Max's son Bruce were the stockholders of  ____________________ 3. Local Rule 56.1 of the United States District Court for the District of Massachusetts requires the party moving for summary judgment to provide a concise statement of the material undisputed facts with citations to affidavits, depositions, or other documentation permitted under Fed. R. Civ. P. 56(c). The party opposing summary judgment must provide a concise statement of material disputed facts, also with citations to affidavits, etc. Properly supported facts set forth by the moving party are deemed admitted unless controverted by the factual statement of the opposing party.  See generally Stepansichen v. Merchants Despatch Transp. ___ _________ ____________ __________________________ Corp., 722 F.2d 922, 930 (1st Cir. 1983) (sanctioning such _____ local rules that facilitate analysis of summary judgment motions). -8- 8 Leach, with Oscar as President and Secretary and Max as Vice- President and Treasurer. Leach sold new, rebuilt, and used machine tools and various other pieces of production and metalworking equipment, some of which it manufactured. In March 1980, Main was incorporated under Rhode Island law with Max Leach and his three children as stockholders. At incorporation and at the time this action commenced, Oscar Leach was not a stockholder of Main, although he was a director. Its other officers and directors were Max and Bruce Leach. Main's primary business at the time of the accident was the sale of used machine tools and various pieces of production and metalworking equipment. Unlike Leach, it never rebuilt or manufactured machinery. Main is a registered agent of Rhodes and sells the Rhodes "New Stamp-Matic" press, the same press that injured Ms. Carreiro. Thirteen of Main's employees are former employees of Leach. Main and Leach shared the same address from 1980, when Main was incorporated, until 1982, when Leach was dissolved, but Main always had its own telephone number and letterhead. After Leach dissolved, its address was in care of Bruce Leach. In response to a discovery request by Robbins, Main produced certain documents of Leach.  In March 1982, Leach was voluntarily dissolved. All of Leach's inventory and assets were sold, discarded, or otherwise disposed of; none were acquired by or transferred -9- 9 to Main. Main acquired no shares of Leach stock. Main was never a creditor of Leach, but it may have done service work on some machines sold by Leach. 2. Analysis ___________ Carreiro argues that genuine issues of material fact precluded summary judgment for Main, but Carreiro has pointed to no disputed facts in either his memorandum _____ opposing summary judgment or his brief on appeal. Instead, he asserts in his brief that "[e]valuative applications of legal standards to the facts are properly questions for the fact finder," citing as support Springer v. Seaman, 821 F.2d ________ ______ 871, 876 (1st Cir. 1987) (holding that application of tort concepts of foreseeability and superseding cause were properly for jury). We need not decide, however, whether the doctrine of corporate successor liability is the sort of "evaluative application of a legal standard" appropriate for a jury. United States v. Rule Indus., Inc., 878 F.2d 535, _____________ __________________ 541-42 (1st Cir. 1989). The summary judgment record here contains no evidence of any transfer of assets from Leach to Main, which, as we explain below, is a threshold requirement for successor liability under the theories advanced by Carreiro. Thus, there being no genuine issues of fact in dispute, Main was entitled to judgment as a matter of law. (a) Successor Liability Generally _____________________________ -10- 10 The corporate law doctrine of "successor liability" comprises a set of exceptions to the general rule that a corporation purchasing the assets of another is not liable ___ for the debts of the seller corporation. The parties' briefs rely on Dayton v. Peck, Stow & Wilcox Co., 739 F.2d 690, 692 ______ _______________________ (1st Cir. 1984) (applying Massachusetts law) to set forth the general rule and the exceptions: The general rule in the majority of American jurisdictions, including Massachusetts, is that "a company which purchases the assets of another company is not liable for the debts and liabilities of the transferor." The general rule is subject to four well-recognized exceptions permitting liability to be imposed on the purchasing corporation: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations.  (citations omitted). Carreiro argues that Main is the successor corporation to Leach based on the second ("de facto merger") and third ("mere continuation") exceptions.  Main counters persuasively that neither of these exceptions apply because there was no sale or other transfer of assets from Leach to Main. Main asserts that because the "de facto merger" and "mere continuation" doctrines are exceptions to the general rule of non-liability following an -11- 11 asset purchase, they necessarily presuppose a sale or other transfer of assets from one corporation to its alleged successor. We agree. As discussed below, the cases and other authority cited by both parties apply the "de facto merger" or "mere continuation" exceptions only where there has been a purchase or other transfer of assets; we have neither been directed to nor found any authority supporting the application of these exceptions in the absence of some transfer of assets.  (b) Rhode Island Precedent ______________________ Several Rhode Island decisions have applied the mere continuation exception, but each case involved an asset transfer. In H.J. Baker & Bro., Inc. v. Orgonics, Inc., 554 _______________________ ______________ A.2d 196, 204 (R.I. 1989), the Supreme Court of Rhode Island stated that "[g]enerally, a company that purchases the assets of another is not liable for the debts of the transferor company." The Baker court, however, imposed successor _____ liability because the corporation's assets were acquired for nominal consideration by its president in a manner calculated to defraud creditors. The president used the acquired assets to continue the same business with the same employees. Id. ___ at 7, 9. See also Casey v. San-Lee Realty, Inc., 623 A.2d ___ ____ _____ _____________________ 16, 19 (R.I. 1993) (finding mere continuation exception inapplicable to intra-family asset transfer for no consideration in the absence of fraud); Cranston Dressed Meat _____________________ -12- 12 Co. v. Packers Outlet Co., 190 A. 29, 31 (R.I. 1937) (finding ___ __________________ one corporation a mere continuation of predecessor where successor corporation used supplies, inventory, and cash-on- hand of predecessor and where court found intent to defraud creditors). These Rhode Island cases apply the "mere continuation" doctrine to impose successor liability in certain asset transfers, an exception to the general rule set forth in Baker that an asset transfer does not create _____ successor liability. Although these cases do not specifically limit the "mere continuation" doctrine to inter- ____________ corporate asset transfers, there is no hint, and it is not logical, that the mere continuation exception should have a broader scope than the rule to which it relates. We are aware of no opinion of the Supreme Court of Rhode Island discussing generally the "de facto merger" exception or specifically whether that exception applies in the absence of an asset transfer.  (c) Predicting Rhode Island Law ___________________________ "In the absence of a definitive ruling by the highest state court, a federal court may consider analogous decisions, considered dicta, scholarly works, and any other data tending to show how the highest court in the state would decide the issue at hand, taking into account the broad policies and the trends so evinced." Gibson v. City of ______ _______ Cranston, 37 F.3d 731, 736 (1st Cir. 1994) (quoting Michelin ________ ________ -13- 13 Tires (Canada), Ltd. v. First Nat'l Bank, 666 F.2d 673, 682 ____________________ ________________ (1st Cir. 1981)). However, Carreiro, in choosing a federal rather than a state forum, is "presumably cognizant of this court's statement that 'litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed.'" Jordan v. Hawker Dayton Corp., 62 F.3d 29, 32 (1st Cir. ______ ____________________ 1995)(declining invitation to extend successor liability to asset purchaser under Maine law)(quoting Ryan v. Royal Ins. ___________________ Co. of America, 916 F.2d 731, 744 (1st Cir. 1990)).  ______________ Carreiro cites no cases or other authority suggesting that the "mere continuation" or "de facto merger" exceptions can apply in the absence of an asset transfer. Every case that Carreiro does cite involved a sale or other transfer of assets from the original corporation to its putative successor. In our research of "scholarly works," see Gibson, 37 F.3d at 736, we find that successor liability ___ ______ in general, and the "mere continuation" and "de facto merger" exceptions in particular, are always discussed and analyzed in the context of inter-corporate asset transfers. Scholarly interest and judicial innovation in this area of corporate law have been fueled by concern with corporate transactions structured as asset purchases to avoid successor liability, which exists in a statutory merger but generally does not in an asset purchase. Because a purchase can achieve the same -14- 14 economic result as a merger when the acquirer continues the same business with the same assets and employees, many courts have reasoned that the same liability rule -- successor liability -- should apply. See, e.g., William M. Fletcher, ___ ____ 15 Cyclopedia of the Law of Private Corporations 7122, ________________________________________________ 7123-23.05 (1990 and Supp. 1995); American Law of Products _________________________ Liability 3d 7:1, 7:10-13 (1987 and Supp. 1995); Phillip _____________ I. Blumberg, The Law of Corporate Groups, 13.05-05.1 ______________________________ (1987). But these treatises and the cases Carreiro cites contain no mention nor even any hint that the "mere continuation" or "de facto merger" doctrines might apply in the absence of an asset transfer.  Our research reveals three decisions where a litigant sought to impose successor liability in the absence of an asset transfer; all three hold that an asset transfer was an essential prerequisite to successor liability. See ___ Williams v. Bowman Livestock Equip Co., 927 F.2d 1128, 1132 ________ ___________________________ (9th Cir. 1991) (without a transfer of assets there is no basis to impose liability under "mere continuation" exception, applying Oklahoma law); Meisel v. M&N Modern ______ ___________ Hydraulic Press Co., 645 P.2d 689, 691-92 (Wash. 1982) _____________________ (transfer of assets an essential prerequisite to successor liability under "de facto merger" and "mere continuation" theories); Evanston Insur. Co. v. Luko, 783 P.2d 293, 296 ____________________ ____ -15- 15 (Haw. Ct. App. 1989) (all exceptions to general rule of no successor liability presuppose a transfer of assets). We conclude that the Supreme Court of Rhode Island would not find successor liability under the "mere continuation" or "de facto merger" doctrines absent any evidence of an inter-corporate asset transfer. Not only is it illogical to extend the scope of an exception more broadly than the general rule to which it relates, but to hold otherwise would "blaze a new trail," which is inappropriate for a federal court applying state law under diversity jurisdiction. See Jordan, 62 F.3d at 32. ___ ______ (d) Applying Rhode Island Law to Leach and Main ___________________________________________ The summary judgment record contains the uncontroverted affidavit of Main's president Max Leach stating that "Main did not acquire any inventory or other assets from H. Leach." At oral argument, Carreiro's lawyer asked this court to infer that some assets must have been transferred when Leach employees joined Main (assets such as hand tools, shop supplies, pencils, and goodwill consisting of the Rhodes distributorship and Leach's customer base), but nothing in the summary judgment record supports that inference. This argument, not presented below and made for the first time at oral argument, is waived. See National ___ ________ Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 749 (1st ________________ _______________ Cir.), cert. denied, 115 S. Ct 2247 (1995)(arguments not _____ ______ -16- 16 presented below are waived); Frazier v. Bailey, 957 F.2d 920, _______ ______ 932 (1st Cir. 1992)(arguments not fully presented in appellate brief are waived). In sum, having concluded that Rhode Island law would not impose successor liability under the de facto merger and mere continuation exceptions absent an asset transfer, and finding no evidence of any asset transfer on the record, we affirm summary judgment for defendant Main. C. Further Discovery on Leach's Dissolution ____________________________________________ Carreiro appeals the district court's denial of his request for additional discovery (after the discovery deadline) that might have shown that Leach was not dissolved in 1982 in accordance with Rhode Island law. To support its motion for summary judgment, Leach submitted a certificate, signed by the First Deputy Secretary of State and bearing the state seal, attesting to Leach's dissolution on March 25, 1982. Carreiro does not challenge that the certificate was validly issued, but instead argues that the court should have allowed Carreiro to conduct further discovery seeking unspecified evidence that Leach had somehow failed to comply with the statutory requirements for dissolution. Rhode Island law provides that a certificate of the secretary of state "shall be taken and received in all courts . . . as prima facie evidence of the existence or non-existence of the ___________ facts stated therein." R.I. Gen. Laws 7-1.1-134. Because -17- 17 Leach submitted the certificate, the district court treated Leach's renewed motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(b). A party opposing ___ summary judgment may have additional discovery under Fed. R. Civ. P. 56(f) where it cannot present essential facts by affidavit, but the party must "articulate a plausible basis for the belief that discoverable materials exist which would raise a trialworthy issue." Price v. General Motors Corp., _____ _____________________ 931 F.2d 162, 164 (1st Cir. 1991). Carreiro neither pointed to any evidence nor made any specific allegations that Leach failed to comply with the requirements for dissolution, and accordingly the district court's denial of the requested discovery was well within its discretion.  D. Survival of Actions Against a Dissolved Corporation _______________________________________________________ According to R.I. Gen Laws 7-1.1-98, entitled "Survival of remedy after dissolution," a claimant may sue a dissolved corporation for "any right or claim existing, or any liability incurred, prior to the dissolution if action or other proceeding thereon is commenced within two (2) years after the date of dissolution." Leach's dissolution in March 1982 was certified by the Rhode Island Secretary of State and is uncontroverted on the summary judgment record. Carreiro argues that his suit can be brought against the dissolved Leach well after the two-year survival period because the liability was not incurred "prior to dissolution," and -18- 18 therefore does not fall within the literal scope of the statute. Although there is no Rhode Island case law discussing the survival of claims against a dissolved corporation under section 7-1.1-98, the Supreme Court of Rhode Island interpreted the analogous Massachusetts statute in Halliwell Assocs., Inc. v. C.E. Maguire Servs., Inc., 586 ________________________ _________________________ A.2d 530 (R.I. 1991). The court explained that at common law "a corporation's capacity to sue or be sued was completely destroyed upon dissolution." Id. at 533. The court added: ___ "Today, all jurisdictions have enacted corporate-survival statutes that abrogate the harsh effect of the common-law rule by allowing a corporation's existence to continue for some time past the date of dissolution to settle its corporate affairs gradually, but not to continue its business." Id. Rhode Island has enacted exactly such a ___ statute, section 7-1.1-98, and the Supreme Court of Rhode Island's explanation of the background common law rule and the intent behind the typical survival statute is persuasive authority as to the proper interpretation of R.I. Gen. Law  7-1.1-98. See supra section II.B.2.(c) (discussing use of ___ _____ other authority in the absence of a holding by state's highest court). In light of the Supreme Court of Rhode Island's explanation of the legislative intent behind the typical -19- 19 survival statute, the language at issue in section 7-1.1-98 (providing a two-year survival period only for liabilities incurred "prior to dissolution") logically means that actions on liabilities incurred after dissolution do not survive at _____ all, not even for the two-year wind-up period. Carreiro's argument that actions on liabilities incurred after dissolution survive forever is untenable in light of the common law rule and the legislative intent to create a limited wind-up period. We conclude that Leach, whose dissolution in 1982 is uncontroverted on the summary judgment record, is not amenable to a suit brought almost ten years after its dissolution and eight years after the expiration of the two-year survival period. Accordingly, we affirm the district court's grant of summary judgment for Leach. E. Direct Action Against Insurer of Dissolved Corporation __________________________________________________________ The district court granted Rumford's motion to dismiss under Fed. R. Civ. P. 12(b)(6), having determined that R.I. Gen. Laws 27-7-2 does not permit a direct action against the insurer of a dissolved corporation. We agree with the district court's analysis and ruling. Section 27-7-2 generally bars a plaintiff from joining an insurer as a defendant in a suit against the insured, a so-called "direct action." An exception to that bar applies "where before suit has been brought and probate -20- 20 proceedings have not been initiated the insured has died."4 R.I. Gen. Laws 27-7-2. Carreiro argues that Leach "died" when it dissolved in 1982, and therefore the foregoing exception applies. Carreiro's suggested interpretation of section 27- 2-2 is unpersuasive. Although the statute's language is not without difficulty, the Rhode Island Supreme Court has stated that section 27-7-2 is "free from ambiguity and expresses a plain and sensible meaning" and "the meaning so expressed will be conclusively presumed to be the one intended by the Legislature." Chalou v. LaPierre, 443 A.2d 1241, 1241 (R.I. ______ ________ 1982). The plain and sensible meaning of the statute does not authorize direct actions against the insurer of a dissolved corporation for the following reasons. First, the plain and sensible meaning of "died" does not embrace the dissolution of a corporation, and Carreiro points to no Rhode Island authority supporting such an interpretation. Second, the legislature surely understood that corporations do not enter probate proceedings; this strongly  ____________________ 4. The syntax of the statute is rather convoluted. Contrary to what the statute suggests, we believe that probate proceedings in Rhode Island are never initiated before death.  The Rhode Island Supreme Court has given this provision its only logical meaning - that "where probate proceedings have been initiated before suit is brought, the plaintiff may not proceed directly against the insurer." Markham v. Allstate _______ ________ Ins. Co., 352 A.2d 651, 653 (R.I. 1976). ________ -21- 21 implies that it did not intend to apply this exception to corporations. Furthermore, the statute provides that once probate has been initiated, direct action against the insurer of a deceased natural person is no longer available. See ___ Markham v. Allstate Ins. Co., 352 A.2d 651, 653 (R.I. 1976). _______ _________________ Thus, the legislature intended this exception to the general rule barring direct action to apply only during the time between the death of the insured and the initiation of probate. If we accept Carreiro's interpretation, there would be no analogous temporal limitation on the exception as applied to a dissolved corporation since probate cannot be initiated. Under that view an insurer would be forever amenable to direct action, and there is no reason to believe that the legislature intended such a result. Third, Carreiro's proposed interpretation of the statute would increase the insurer's liability beyond that of the insured. The Supreme Court of Rhode Island held in Barber v. Canela, 570 A.2d 670 (R.I. 1990), that section 27- ______ ______ 7-2 did not enlarge the liability of the insurer beyond the limits stated in the policy. It set forth as a "general rule" that any rights of a plaintiff against the insurer are "dependent upon the existence of liability of the insurer to the insured under the contract of insurance." Id. at 671 ___ (quoting George J. Couch, et al., 12A Couch Cyclopedia of ____________________ Insurance Law 2d 45:833 at 486 (1981)). A direct action _________________ -22- 22 here, where the insured cannot be sued because it is a dissolved corporation, would contravene that rule. It would be unreasonable for us to reach that result through a tortured interpretation of the statute and without precedent under Rhode Island law. In light of the foregoing, we find it unnecessary to certify this statutory interpretation question to the Supreme Court of Rhode Island as Carreiro urges. Because section 27-7-2 generally prohibits direct actions against the insurer of a potentially liable party and because we conclude that Carreiro's suit does not fit within the statutory exceptions to that prohibition, we affirm the dismissal of Rumford.  F. Main's Indemnification Claim Against Robbins ________________________________________________ Because we affirm the district court's grant of summary judgment in favor of Main on Carreiro's complaint, Main's appeal seeking to revive its third-party indemnification claim against Robbins is moot. IV. IV. ___ CONCLUSION CONCLUSION __________ For the foregoing reasons, the decisions of the district court are affirmed. affirmed ________ -23- 23