**Opinion filed February 27, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00044-CV

_____

**REGAL WARE, INC., Appellant**
**V.**
**CFJ MANUFACTURING, L.P. D/B/A**
**CFJ MANUFACTURING AND COLLECTIONS**
**FINE JEWELRY, INC., Appellee**

**On Appeal from the 352nd District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 352-257187-11**

**M E M O R A N D U M   O P I N I O N**

This appeal arises out of an original dispute between Saladmaster, Inc., a dissolved Delaware corporation that is now a division of Regal Ware, Inc., and CFJ Manufacturing, L.P., a Texas limited partnership, over CFJ's sale of allegedly "genuine" Rolex watches to Saladmaster. Regal Ware asserted that it was either the successor of Saladmaster or that it had received the assignment of

Saladmaster's fraud claims against CFJ when Saladmaster dissolved. Regal Ware alleged that CFJ defrauded Saladmaster when CFJ represented to Saladmaster that the watches were "genuine" Rolex watches when, in fact, the watches were not "genuine" Rolex watches.

The trial court granted CFJ's combined traditional and no-evidence motion for summary judgment and entered a final judgment that Regal Ware take nothing on its fraud claims. In the alternative, the trial court also granted CFJ's plea to the jurisdiction because Regal Ware lacked standing to pursue claims that Saladmaster had against CFJ. Regal Ware appeals the trial court's judgment. We affirm.

## I. *Background Facts*

Saladmaster operated a direct-sale business of cookware and kitchen products. At various times from 2004 to 2006, Saladmaster purchased approximately $225,000 in watches from CFJ. Saladmaster purchased the watches based on CFJ's representation that they were genuine Rolex watches. Saladmaster ordered several watches and other jewelry from CFJ in November and December 2006, with some of the watches being delivered in those months and the remainder being delivered in January 2007.[1] Saladmaster used the watches as performance incentives for its direct sellers.

On December 14, 2006, Saladmaster's board of directors adopted a resolution calling for the corporation to be dissolved on December 31, 2006, and for its assets to be transferred to its sole shareholder, Regal Ware. Saladmaster filed a certificate of dissolution with the Delaware secretary of state on December 26, 2006. Regal Ware formed its own Saladmaster division, and that

---

[1]We note that one invoice included in the summary judgment evidence had a January 9, 2007 invoice date with a January 10, 2007 shipping date of jewelry and one men's Rolex watch. This invoice is almost identical to an earlier 2006 invoice. But Regal Ware has not alleged or provided any evidence that would raise a material fact question that its Saladmaster division purchased items from CFJ in January 2007.

division used the employees, sellers, and other operations of the dissolved Saladmaster. Later, after several of the sellers reported problems with the watches, Regal Ware through its Saladmaster division alleged that the watches were not genuine Rolex watches and demanded replacement watches or refunds. CFJ refused those requests.

On December 27, 2011, Regal Ware filed suit against CFJ seeking to recover the $225,000 that Saladmaster paid CFJ for the watches. Through its petition, Regal Ware alleged claims of fraud and fraudulent inducement. CFJ answered with a general denial and then filed a traditional and no-evidence motion for summary judgment and, in the alternative, a plea to the jurisdiction. In its motion, CFJ argued that Regal Ware lacked capacity to assert the fraud claims because the lawsuit was not filed within three years of Saladmaster's dissolution, as required by Delaware's corporate survival statute. *See* DEL. CODE ANN. tit. 8, § 278 (West 2010). After a hearing, the trial court granted CFJ's motion and entered a final judgment; Regal Ware appealed.

## II. *Issues Presented*

Regal Ware presents two issues. First, Regal Ware argues that it has standing to pursue the claims because they are not derivative of Saladmaster. Second, Regal Ware argues that it also has standing because Saladmaster, upon dissolution, assigned its claims to Regal Ware.

## III. *Standard of Review*

We review a trial court's summary judgment under a de novo standard. *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 422 (Tex. 2010). Because the trial court did not specify the grounds upon which it relied when it granted summary judgment, we will affirm the summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). We also review de novo a ruling by the trial court in which it granted a plea

to the jurisdiction. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We construe pleadings liberally in favor of the plaintiff and take as true all evidence favorable to the plaintiff. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

### IV. *Analysis*

Regal Ware challenges the final judgment of the trial court and asserts in two issues that it has standing to bring suit against CFJ. Because the question presented by both of Regal Ware's issues is whether Delaware's corporate survival statute prevented Regal Ware from asserting claims, we review both issues together.

At common law, the legal existence of a corporation was terminated upon dissolution. *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 549 (Tex. 1981). To limit the draconian effect on those dealing with a corporation, courts developed a trust fund theory, which was an equitable doctrine whereby the assets of the dissolved corporation that had been distributed to shareholders were said to be burdened with a lien in favor of creditors. *Id.* at 550. Later, the legislature codified this doctrine; the survival statute creates a right or claim that would not exist apart from the statute. *Martin v. Tex. Woman's Hosp., Inc.*, 930 S.W.2d 717, 720 (Tex. App.—Houston [1st Dist.] 1996, no writ) (citing *M.S. v. Dinkytown Day Care Ctr., Inc.*, 485 N.W.2d 587, 589 (S.D. 1992)). The distinction between a statute of limitations, which is an affirmative defense, and a survival statute is that a statute of limitations affects the time that a stale claim may be brought. *Id.* In contrast, a survival statute extends for a limited time the ability of a dissolved corporation to bring or defend suits—an ability that would have ended at its dissolution date but for the statute's extension. *Gomez v. Pasadena Health Care Mgmt., Inc.*, 246 S.W.3d 306, 315 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Because Saladmaster and Regal Ware were incorporated in Delaware, the parties agree that Delaware law applies in this case. TEX. BUS. ORGS. CODE ANN. §§ 1.102, 1.104 (West 2012). "Delaware law governs the internal affairs of . . . a Delaware corporation." *Highland Crusader Offshore Partners, L.P. v. Andrews & Kurth, L.L.P.*, 248 S.W.3d 887, 890 n.4 (Tex. App.—Dallas 2008, no pet.) (citing *Warren v. Warren Equip. Co.*, 189 S.W.3d 324, 329 (Tex. App.—Eastland 2006, no pet.)). In this situation, we proceed as a federal court would under the *Erie*[2] doctrine: we look first for an authoritative decision on point from that state's highest court, and if none is available, we give due deference to decisions by that state's lower courts and other authorities. *Id.* (citing *Francis v. Herrin Transp. Co.*, 432 S.W.2d 710, 714 (Tex. 1968) (following decisions of Louisiana's courts of appeals in the absence of a pertinent decision from the Louisiana Supreme Court)). In relevant part, Delaware's corporate survival statute provides:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized.

DEL. CODE ANN. tit. 8, § 278. Regal Ware argues that Section 278 does not apply to its claims against CFJ for several reasons: (1) Saladmaster did not dissolve but, rather, "functionally merged" with Regal Ware; (2) as Saladmaster's sole shareholder, Regal Ware did not sue CFJ derivatively; and (3) the claims were assigned to Regal Ware by Saladmaster. *See id.*

---

[2]*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## A. Merger versus Dissolution

We first address Regal Ware's claim that Section 278 is inapplicable to this case because Regal Ware "functionally merged" with Saladmaster. Regal Ware argues that the difference between dissolution and merger in this case is a mere "technicality." In support of its argument, Regal Ware notes that Saladmaster became a division within Regal Ware after its dissolution and that the same people continue to do the same business under the Saladmaster name.

We do not agree with Regal Ware's claim that it "functionally merged" with Saladmaster. Dissolution and merger are two distinctly different ways to change the structure of a corporation. In a dissolution, the privileges, powers, rights, and duties of the corporation come to an end and suffer a corporate death. *Vanscot Concrete Co. v. Bailey*, 862 S.W.2d 781, 784 (Tex. App.—Fort Worth 1993), *aff'd*, 894 S.W.2d 757 (Tex. 1995). In a merger, these attributes of corporate life are transferred to the surviving corporation and are there continued and preserved. *Id.* Moreover, dissolutions and mergers are governed by separate sections of the Delaware Corporations Code. *See* DEL. CODE ANN. tit. 8, §§ 273–285, 251–262. Recognizing the distinction between dissolutions and mergers, Section 278 expressly applies only when a corporation chooses to dissolve itself. *See* DEL. CODE ANN. tit. 8, § 278.

We conclude that Saladmaster dissolved itself and transferred its assets to Regal Ware.[3] Given this conclusion, Delaware's corporate survival statute bars Regal Ware's claims against CFJ unless an exception to the statute applies.[4]

---

[3]At the summary judgment hearing, Regal Ware recognized that Saladmaster made a choice to dissolve. In its brief, Regal Ware "does not dispute that Saladmaster is in fact dissolved."

[4]In our review of Delaware case law, we found that no case provided a direct answer to the issue presented in this case. Thus, we turn to other jurisdictions for guidance. *See Highland Crusader*, 248 S.W.3d at 890 n.4.

## B. Individual-Shareholder-Claim Exception

An examination of case law from other jurisdictions reveals that there are two types of actions that arise during the period of corporate existence but survive past the windup period of the survival statute: (1) those actions brought in an individual capacity for a personal wrong and (2) ascertainable or previously asserted claims that have the character of a tangible property asset and that have devolved by law or have been assigned to the shareholders. *Davis v. St. Paul Fire & Marine Ins. Co.*, 727 F. Supp. 549, 552 (D.S.D. 1989) (applying South Dakota's corporate survival statute). When a claim is held individually by a shareholder of a dissolved corporation, even if the claim arose from a corporate matter, the corporate survival statute is not applicable. *Sharif v. Int'l Dev. Grp. Co.*, 399 F.3d 857, 861 (7th Cir. 2005) (applying the corporate survival statute of Illinois); *Halliwell Assocs. v. C.E. Maguire Servs., Inc.*, 586 A.2d 530, 533 (R.I. 1991) (applying the corporate survival statute of Massachusetts). If, on the other hand, an action seeks to redress a wrong done to the corporation, or if the claim arose solely as a consequence of a corporate wrong, the claim is derivative in nature and will not survive past the windup period. *Halliwell*, 586 A.2d at 533.

Regal Ware's action against CFJ was not an individual shareholder action but, rather, a claim sought to redress a wrong done to Saladmaster. As such, the claims were personal to Saladmaster and clearly derivative to Regal Ware. Thus, the individual shareholder exception does not apply to Regal Ware's claims against CFJ.

## C. Property Interest Exception

The second type of action that arises from the period of corporate existence but endures past the survival statute's windup period involves ascertainable or previously asserted claims that have the character of a tangible property asset and that have devolved by law or have been assigned by the shareholders. *Sharif*, 399

F.3d at 861; *Halliwell*, 586 A.2d at 534. Classes of assets that courts have held devolve to shareholders upon dissolution are primarily interests in either real or personal property, corporate claims asserted within the windup period, fixed liabilities, or liquidated debts. *Halliwell*, 586 A.2d at 534–35.

Courts in other jurisdictions have declined to extend this list of assets to include unasserted corporate contract claims. *See, e.g.*, *Sharif*, 399 F.3d at 861 (recognizing that Illinois corporate survival statute bars inchoate claims); *Hutson v. Fulgham Indus., Inc.*, 869 F.2d 1457, 1463–64 (11th Cir. 1989) (finding that Alabama's corporate survival statute barred unasserted fraud claim); *Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.*, 629 F.2d 1183, 1187 (7th Cir. 1980) (finding that corporate survival statute of Illinois barred unasserted corporate claim); *Davis*, 727 F. Supp. at 552–53 (holding that South Dakota's corporate survival statute barred unexecuted corporate contract claim because the claim was not ripe and was not a tangible representation of a fixed ascertainable debt). We find the reasoning in these cases to be persuasive.

Unlike a note or mortgage, an unasserted cause of action based on a breach of contract claim is not a debt fixed in amount and evidenced by a document. *Davis*, 727 F. Supp. at 552–53. Rather, an unasserted contract claim involves evidentiary problems and factual disputes. *Hutson*, 869 F. 2d at 1463. We decline to recognize a property interest in such an undefined claim. *Davis*, 727 F. Supp. at 553 (allowing pursuit of corporate claims that are merely embryonic beyond the windup period would expand the corporate survival statute beyond its terms and would interfere with its purpose of requiring the prompt and orderly winding up and finalization of a dissolved corporation's affairs); *MBC, Inc. v. Engel*, 397 A.2d 636, 639 (N.H. 1979) ("The policy behind the [survival] statute is favored over the ends of particularized justice. To allow lawsuits involving a dissolved corporation to commence in contravention of a clearly expressed legislative policy would

thwart the orderly process of corporate dissolution . . . . It would produce continuous dribble of the business activity contrary to the intent of the winding up provisions of the statute." (internal quotation marks and citations omitted)).

We conclude that the claims against CFJ did not devolve to Regal Ware. The claims were unasserted at the time of Saladmaster's dissolution, and courts in other jurisdictions have consistently held that unasserted corporate claims do not fall within the property interest exception. We also conclude that the claims against CFJ were not assigned to Regal Ware; thus, the property interest exception does not apply to this case. We disagree with Regal Ware's claim that a ledger dated February 1, 2007, which documents the transfer of all assets from Saladmaster to Regal Ware, shows that the fraud claims were assigned to Regal Ware.

Even if the ledger constituted a general assignment, Saladmaster's unasserted fraud claims were not covered by the general assignment. *See Nix v. W.R. Grace & Co.–Conn.*, 830 F. Supp. 601, 605 (S.D. Ala. 1993) (holding that a general assignment of claims by a corporation to its shareholders prior to the corporation's dissolution does not preserve unasserted claims past the statutory windup period). The cases Regal Ware cites suggest that the fraud claims are subject to transfer and assignment apply only to claims asserted prior to a corporation's dissolution. *See Sharif*, 399 F.3d at 861; *Kalmanovitz v. Heileman Brewing Co.*, 595 F. Supp. 1385, 1399 (D. Del. 1984); *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1204 (Del. Ch. 2010); *Lewis v. Anderson*, 453 A.2d 474, 479 (Del. Ch. 1982).

Even if we were to find that Saladmaster's alleged fraud claims had been assigned to Regal Ware, which we do not, Regal Ware would still have been required to file its suit against CFJ within the three-year time limit prescribed by Section 278. *See* DEL. CODE ANN. tit. 8, § 278; *Davis*, 727 F. Supp. at 552–53;

*MBC*, 397 A.2d at 639 ("All remedies available to either the corporation or the shareholder may be enforced only during the statutory continuance period. The former shareholder has no greater rights than the defunct corporation."). As the Supreme Court of New Hampshire said in *MBC*, "We will not permit the corporation continuance statute to be circumvented by allowing former shareholders to assert expired rights of a defunct corporation after the statutory period has elapsed." *MBC*, 397 A.2d at 639.

Regal Ware brought claims against CFJ that were personal to Saladmaster and were derivative to Regal Ware. Saladmaster failed to assert the claims while still in existence or within the time prescribed by the survival statute. Regal Ware then waited five years after the dissolution of Saladmaster to bring the claims. Given these facts, we hold that Regal Ware's claims against CFJ were barred by Delaware's corporate survival statute. *See* DEL. CODE ANN. tit. 8, § 278. We further hold that the trial court did not err when it granted CFJ's motion for summary judgment and, in the alternative, CFJ's plea to the jurisdiction. We overrule both of Regal Ware's issues.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

February 27, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.